# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| MAKITA BRYANT,<br><br>    Plaintiff,<br><br>v.<br><br>C&M DEFENSE GROUP LLC,<br>CHARLES REEDY, JR., REGINALD<br>DANIELS, and GLOBAL SECURITY<br>MANAGEMENT TEAM LLC,<br><br>    Defendants. | Civil Action No.<br>1:23-cv-05848-MHC<br><br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff Makita Bryant ("Plaintiff" or "Bryant") files this Second Amended Complaint against Defendant C&M Defense Group LLC ("Defendant C&M"), Defendant Charles Reedy, Jr. ("Defendant Reedy"), Defendant Reginald Daniels ("Defendant Daniels"), and Defendant Global Security Management Team LLC ("Defendant GSM") (collectively "Defendants").

Plaintiff brings this Complaint against Defendant C&M and Defendant Reedy, alleging systemic violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA") (Counts I). Defendant GSM is a successor in interest to Defendant C&M.

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and now amends her Complaint to include claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") for hostile work environment (Count II), *quid pro quo* harassment (Count III), discrimination based sexual orientation (Count IV), and retaliation for engaging in protected activity (Count V), following the EEOC's for cause finding and Plaintiff's receipt of the Notice of Right to Sue ("NTRS"). Defendant GSM is a successor in interest to Defendant C&M.

Plaintiff additionally asserts Georgia state law claims against Defendant C&M for negligent failure to prevent sexual harassment (Count VI) and negligent and wrongful hiring and supervision (Count VII). Plaintiff asserts state law claims against Defendant Daniels for civil battery (Count VIII), civil assault (Count IX), and false imprisonment (Count X). Plaintiff asserts state law claims for conversion of property (Count XI) and trespass to chattel (Count XII) against Defendant C&M and Defendant Reedy. Plaintiff asserts state law claims against Defendant C&M, Defendant Reedy, and Defendant Daniels for intentional infliction of emotional distress (Count XIII), punitive damages (Count XIV), and attorneys' fees and expenses of litigation (Count XV). Defendant GSM is a successor in interest to Defendant C&M.

Plaintiff shows the Court as follows:

## JURISDICTION AND VENUE

1. This court has federal-question jurisdiction over Plaintiff's FLSA and Title VII claims, pursuant to 28 U.S.C. §§ 1331 and 1343.co

2. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state-law claims because such claims are so related to Plaintiff's employment claims brought under federal law that they form part of the same case or controversy.

3. Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3) and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were primarily committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

4. Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; she submits himself to the jurisdiction of this Court.

5. Plaintiff was employed as a Security Officer for Defendant C&M Defense from approximately April 2021 to April 3, 2023.

6. Defendant C&M is a Georgia corporation with its principal place of business at 3961 Floyd Rd, Ste 300198, Austell, GA, 30106, USA.

7. Defendant C&M regularly transacts business in the Atlanta Division of the Northern District of Georgia.

3

8. Defendant C&M may be served with process at 3961 Floyd Rd, Suite 300198, Austell, GA, 30106, USA.

9. Defendant Daniels was employed as Vice President of Operations for Defendant C&M.

10. On information and belief, Defendant Daniels is a Georgia resident, who regularly transacts business in the Atlanta Division of the Northern District of Georgia.

11. Defendant Daniels may be served with process at his place of employment or residence.

12. Defendant Reedy is employed as Chief Operating Officer of Defendant C&M.

13. On information and belief, Defendant Reedy is a Georgia resident, who regularly transacts business in the Atlanta Division of the Northern District of Georgia.

14. Defendant Reedy may be served with process at his place of employment or residence.

15. Defendants C&M and Reedy are governed by and subject to 29 U.S.C. §§ 206, 207.

16.    At all relevant times, Defendants C&M and Reedy have been, and continue to be, "employer[s]" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 201 *et seq.*

17.    At all relevant times, Defendants C&M and Reedy have had two or more "employees engaged in commerce or in the production of goods for commerce," as defined in 29 U.S.C. § 203(s)(1)(A)(i).

18.    On information and belief, at all relevant times, Defendant C&M has had an annual gross volume of sales or business done in excess of $500,000.00.

19.    At all relevant times, Defendants C&M and Reedy were "employers" of Plaintiff and other similarly situated persons as that term is defined by 29 U.S.C. § 203(d).

20.    On information and belief, at all relevant times, Defendant Reedy asserted control of Defendant C&M's day-to-day operations where Plaintiff and similarly situated persons worked and made the decisions regarding the amount that Plaintiff and similarly situated persons would be compensated and is therefore an employer within the meaning of the FLSA.

21.    Defendant GSM is liable for the actions of Defendant C&M through successor liability.

22.    Defendants C&M, Reedy, and GSM had notice of this lawsuit prior to the termination of C&M through the Secretary of State of Georgia.

23. There is continuity between the operations and work force of Defendants C&M and GSM.

24. For purposes of Plaintiff's pending Title VII claims, the EEOC has found Defendant GSM to be a successor in interest.

25. Plaintiff hereby asserts the claims asserted against Defendant C&M against Defendant GSM also.

26. Defendant GSM may be served with process through its registered agent, Defendant Reedy, at 2555 Delk Rd, Ste A-10, Marietta, Georgia 30067.

## ADMINISTRATIVE EXHAUSTION

27. Plaintiff has satisfied all administrative prerequisites for bringing her Title VII claims in this Court.

28. On April 26, 2023, Plaintiff timely filed a Charge of Discrimination with EEOC asserting claims of hostile work environment, *quid pro quo* harassment, discrimination based sexual orientation, and retaliation for engaging in protected activity in violation of Title VII.

29. On May 6, 2024, the EEOC issued a "for cause" finding that stated that there was "reasonable cause to conclude that Charging Party was subjected to a hostile work environment based on her sex (female) and sexual orientation and was discharged in retaliation for engaging in protected activity, all in violation of Title VII."

30.    On May 6, 2024, the EEOC stated in its "for cause" finding that:

Respondent Global Security Management Team, LLC is a successor company of Respondent C&M Defense Group, LLC. The evidence reveals that Charging Party was employed by Respondents from 2021 until about April 2023 as a security officer. The evidence also shows that, from at least January 2022 through about March 2023, Charging Party was subjected to severe and pervasive harassment based on her sex (female) and her sexual orientation which altered the terms and conditions of her employment. The harassment consisted of frequent inappropriate sexual comments and sexual advances from Charging Party's supervisor, Respondent C&M Defense Group, LLC's Vice President of Operations. On or about March 31, 2023, Charging Party reported the harassment to Respondents' Owner, including that her supervisor had sexually assaulted her. Respondents did not assign Charging Party to any other shifts after April 3, 2023. Approximately four days after Charging Party complained about the hostile work environment, Respondents terminated Charging Party's employment. Respondents proffered, shifting reasons for the termination of Charging Party's employment do not withstand scrutiny and are pretext for discrimination and retaliation.

31.    The EEOC made a litigation recommendation on Plaintiff's Charge.

32.    On January 7, 2025, the EEOC issued NRTS regarding Plaintiff's Charges of Discrimination against Defendants C&M and GSM at the request of counsel.

33.    Plaintiff amends her complaint to assert her Title VII claims within 90 days of her receipt of the NRTS.

**STATEMENT OF FACTS**

34.    Plaintiff began working for Defendant C&M as a Security Officer in approximately April 2021.

35.    Defendants C&M and Reedy employ, and have employed in the statutory period, a number of individuals as Security Officers, who they pay on an hourly basis and misclassify as independent contractors.

36.    Throughout the period in which Defendants C&M and Reedy misclassified Plaintiff as an independent contractor, Defendants C&M and Reedy paid Plaintiff a set hourly rate of $15.00 for all time worked on the clock.

37.     While Defendants misclassified Plaintiff as an independent contractor, Plaintiff was, at all times, an employee of Defendants.

38.    Defendants provided Plaintiff with her schedule, worksites, shifts, and her uniform, including her shirt and tactical vest. Plaintiff did not have the ability to turn down work.

39.    Plaintiff made little to no investment in Defendants' business.

40.    Defendants were solely responsible for generating the schedule of available shifts for Security Officers, including Plaintiff.

41.    Defendants dictated Plaintiff's hourly pay.

42.    Plaintiff's wages depended entirely on the number of hours she worked at the rates set by Defendants. Managerial skill and individual initiative were not

material factors in Plaintiff's compensation because, *inter alia*, her job duties were assigned and controlled by Defendants, Defendants controlled her schedules, and Plaintiff was solely compensated based on the number of hours she worked at rates set by Defendants.

43.    Plaintiff regularly worked more than forty (40) hours per workweek without being paid one-and-one-half times the regular rate of pay for all overtime worked.

44.    At times throughout Plaintiff's employment, Plaintiff was required to work over one hundred hours a week and was not paid one-and-one-half times her regular rate of pay for all overtime worked.

45.    Defendants C&M and Reedy knew or should have known that Plaintiff worked in excess of forty (40) hours per workweek.

46.    Each and every week that Plaintiff worked in excess of forty (40) hours per week, Defendants C&M and Reedy failed to pay her overtime wages for time worked in excess of forty (40) hours per week.

47.    Despite Defendants' knowledge of overtime worked by Plaintiff, Defendants continued their practice of misclassifying Plaintiff as an independent contractor.

9

48.    Defendants C&M and Reedy regularly, and as a routine policy and practice, failed to pay Plaintiff at a rate of one-and-one-half times her regular rate of pay for all time worked in excess of forty (40) hours per workweek.

49.    In January 2022, while Plaintiff was working at one of the worksites, Defendant Daniels showed up at the end of her shift, said that he did not want to go home, and asked if Plaintiff wanted to go to a strip club.

50.    Plaintiff told him that she did not want to go to a strip club.

51.    Defendant Daniels then asked her if she wanted to get some food and talk.

52.    Plaintiff felt that she had to agree because Defendant Daniels was her boss.

53.    Plaintiff and Defendant Daniels then went to American Deli and took their food to Defendant Daniels' company car.

54.    While in Defendant Daniels' company car, Defendant Daniels asked if he could give Plaintiff a hug.

55.    Defendant Daniels then began rubbing Plaintiff's back and pulling her shirt out of the back of her pants.

56.    Plaintiff, who was startled and frightened by Defendant Daniels' actions, asked Defendant Daniels to stop.

10

57. Defendant Daniels then asked Plaintiff when she "got laid" last. Defendant Daniels asked Plaintiff to let him "get [her] off."

58. Plaintiff rejected Defendant Daniels' advances and was visibly uncomfortable.

59. Despite Plaintiff's protestations, Defendant Daniels continued and told Plaintiff that she was making "something get hard in [his] pants, between [his] legs," referring to his erect penis.

60. Plaintiff again protested and stated that she was uncomfortable.

61. Defendant Daniels apologized and said that he went too far "unless [Plaintiff] wanted to."

62. Defendant Daniels then suggested that he get a hotel room for him and Plaintiff for the night.

63. Plaintiff told him no and that she was uncomfortable because he was her manager. Plaintiff then got out of the car.

64. Plaintiff was emotionally distraught following these events.

65. Plaintiff told her now-deceased aunt what Defendant Daniels did to her, and her aunt provided her with a recording device to use in case Defendant Daniels sexually harassed or assaulted her again.

66. Plaintiff began carrying the recording device with her out of fear that Defendant Daniels would sexually harass and assault her again.

67. About a month later, in February 2022, while Plaintiff was working by herself in the guard shack at the worksite in Forest Park, Defendant Daniels showed up and said that he wanted to go look inside the building with Plaintiff because Defendant C&M had recently lost the contract with the worksite.

68. Plaintiff went into the building with Defendant Daniels as he requested.

69. Once inside the building, Plaintiff noticed that all of the security cameras had been taken down. Plaintiff believes that this was a result of Defendant C&M's contract ending.

70. Defendant then stated, "Yeah, it is empty in here," walked to the very back of the building area, and asked Plaintiff to come with him.

71. Defendant Daniels then asked Plaintiff, "Why haven't you tried to reach out to me?"

72. Defendant Daniels asked Plaintiff to have sex with him. Defendant Daniels stated that he and Plaintiff "can do it here."

73. Plaintiff told him again that she was not comfortable, that she did not want to have sex with him, and that he was married.

74. In response, Defendant Daniels told Plaintiff to let him worry about his wife.

75. Defendant Daniels then asked Plaintiff, "Have you gotten laid yet?"

76. Defendant Daniels then pushed Plaintiff up against the wall, grabbed and groped Plaintiff's breast, and tried to undo her belt.

77. Defendant Daniels kept Plaintiff up against the wall, unzipped his pants, fully exposed his erect penis to Plaintiff, and ordered her to touch his erect penis.

78. Plaintiff, who was frightened that Defendant Daniels was going to force her to touch his penis and then rape her, told him no and that a truck would be showing up at the worksite soon, as an excuse to get away from him.

79. After this, Plaintiff was able to escape from Defendant Daniels and quickly went outside of the building.

80. Defendant Daniels followed Plaintiff out of the building and said, "You need to let me take care of you" and began discussing a promotion for Plaintiff.

81. Defendant Daniels offered to do some "favors" for Plaintiff, including paying to have Plaintiff's car fixed.

82. Plaintiff rejected Defendant Daniels' advances and requests for sexual acts in exchange for a promotion and "favors."

83. At one point, in response to Plaintiff's opposition, Defendant Daniel stated, "I do not know why you do not like me."

84.     Defendant Daniels also stated, "You need to let me get you off or a female or we could have fun with a friend" or words to that effect. He also told Plaintiff that she needed to give him a chance.

85.     Plaintiff is a lesbian.  Defendant Daniels knew this and made sexual comments related to Plaintiff's sexuality.

86.     Plaintiff audio recorded the February 2022 sexual harassment and assault, described in preceding paragraphs 67-84, on her recording device, which was inside her tactical vest.

87.     From February 2022 to December 2022, Defendant Daniels continued to ask Plaintiff if she had "gotten laid yet."

88.     In December 2022, Defendant Daniels called Plaintiff on the phone while she was working at the Fairburn GXO Tesla worksite, asked when the employees were going on break, and said, "I bet you won't go in the bathroom during the break and play with yourself. I am horny. I bet you are not freaky enough to go in the bathroom and play with yourself and FaceTime me and let me watch."

89.     Plaintiff was disgusted by Defendant Daniels' sexual requests and once again rejected his advances.

90.     On March 31, 2023, around 1:30 a.m., Defendant Reedy came to the GXO Tesla worksite while Plaintiff was working, and informed Plaintiff that

Defendant Daniels was no longer employed with Defendant C&M and that Defendant C&M had lost the contract where Plaintiff was working.

91.    Defendant Reedy stated that Defendant Daniels had been stealing from him and that he heard rumors that Defendant Daniels was sexually harassing people at his company.

92.    Plaintiff then complained to Defendant Reedy that she was sexually harassed and assaulted by Defendant Daniels on multiple occasions while working for Defendants.

93.    Following her report, Plaintiff went to her car to retrieve the recording device with the audio recording from the February 2022 sexual harassment and assault on it.

94.    Plaintiff then provided the recording device with headphones and tape to Defendant Reedy and informed him that she had an audio recording of what Defendant Daniels did to her in February 2022 on it and that he could review the recording and return it to her.

95.    Defendant Reedy asked to keep the recording device, took possession of the recording device, and promised to review and return it to Plaintiff quickly.

96.    On March 31, 2023, at 4:13 p.m., following the meeting between Defendant Reedy and Plaintiff when Plaintiff reported Defendant Daniels' sexual harassment and assault, Plaintiff sent Defendant Reedy a text message asking when

15

she could get the recording device back. Plaintiff told Defendant Reedy that her deceased aunt's voice was on the other side of the tape.

97. Mr. Reedy did not respond to the message.

98. In subsequent messages to Defendant Reedy and Ms. Michelle Hudley, Vice President of Defendant C&M, Plaintiff asked for the return of the recording device, headphones, and tape.

99. On April 2, 2023, Plaintiff called Defendant Reedy, and he said he was working on the schedule and would give Plaintiff a new site soon.

100. On April 2, 2023, Hudley then reassigned Plaintiff to another site location at 585 DeKalb Industrial Way, Decatur, Georgia 30033.

101. Ms. Bryant worked at the site location on April 2, 2023 and April 3, 2023.

102. On April 3, 2023, Hudley gave Plaintiff another worksite for her shift on April 4, 2023.

103. Following her shift on April 3, 2023, Defendant Reedy texted Plaintiff and said, "Hi Markita [sic], Michelle gave you a post to go to tomorrow. Do not report there. That post was already filled."

104. Plaintiff proceeded to ask why she was fired and again requested the return of the recording device with the February 2022 events on it.

105. Defendant Reedy did not respond to Plaintiff.

106. On April 4, 2023, Plaintiff texted Hudley asking if she was terminated and if it was because of the tape recording.

107. Hudley did not respond.

108. From April 4, 2023 to April 10, 2023, Plaintiff requested placement at another worksite, requested the recording device, headphones, and tape back from Defendants, and received no response from Defendants.

109. On April 5, 2023, Plaintiff texted Defendant Reedy and said, among other things, "I have asked for the tape recorder back for several days now" and "I gave you the entire tape recorder, ear phones as well as the tape inside in good faith so that you could hear the harassment at Gxo Tesla in Fairburn, Ga on Friday, March 31,2023 [sic] at approximately 2:00 am."

110. Plaintiff also texted Defendant Reedy to again inform him that her deceased aunt's voice was on the other side of the tape and that it was all that her family had left of her talking.

111. On April 5, 2023, Plaintiff texted Hudley a similar message requesting the recording device back.

112. Defendant Reedy did not respond to Plaintiff's messages.

113. On April 7, 2023, Plaintiff texted Defendant Reedy and said, "When are you going to give me the tape recorder back it doesn't belong to me I gave it to you so that you could hear the harassment from Mr. Daniels."

114. Defendant Reedy again did not respond to Plaintiff.

115. On April 7, 2023, Plaintiff texted Hudley and again asked, "Can I please have my Aunt's tape recorder back with the tape and earphones please. You said you would make sure I got it back."

116. Hudley did not respond to Plaintiff's request for the recording device back.

117. On April 11, 2023, Hudley stated, "[W]e don't have anything open at this moment."

118. Defendant C&M and Defendant Reedy terminated Plaintiff following her report of sexual harassment and assault.

119. On April 14, 2023, Plaintiff, through her counsel, sent an evidence preservation notice and demanded that her recording device, her personal property, be returned within seven calendar days.

120. Defendant Reedy did not return the recording device.

121. Plaintiff was a well-performing employee and received nothing but praise for her work up until her report of Defendant Daniels' harassment.

122. Defendant C&M and Reedy terminated Plaintiff in retaliation for her report of sexual harassment and assault by Defendant Daniels.

123. Plaintiff has suffered financial loss, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

124. Plaintiff has also suffered physical, mental, and emotional damages because of Defendants' actions, including anxiety, depression, and post-traumatic distress disorder.

125. Defendants' actions and inactions were willful, wanton, and in reckless disregard for Plaintiff's rights.

126. On or about September 27, 2023, Defendant C&M filed a position statement with the EEOC responding to Plaintiff's EEOC Charge.

127. Shortly thereafter, on October 18, 2023, Defendant Reedy filed for a Name Reservation for "Global Security Management Team" through the Secretary of State of Georgia.

128. The name reservation became effective on October 23, 2023 and was effective for thirty days.

129. On November 11, 2023, Defendant Reedy filed the Articles of Organization for Global Security Management Team LLC with its principal office address as 2555 Delk Rd, Ste A-10, Marietta, Georgia 30067 and listed himself as the registered agent and organizer. The Articles of Organization took effect on November 24, 2023.

130. On December 26, 2023, Defendant Reedy filed Defendant GSM's Annual Registration for 2023 and 2024.

131. In April 2024, the EEOC informed Defendants C&M and GSM that it was recommending a "for cause" finding and that it would issue a Letter of Determination against the Defendants pending approval.

132. Following the EEOC's notification to Defendants of the "for cause" finding against them, on April 16, 2024, Defendant Reedy filed to terminate Defendant C&M through the Secretary of State of Georgia. The termination took effect on April 17, 2024.

133. On April 26, 2024, counsel for Defendants C&M and Reedy informed Plaintiff's counsel that Defendant C&M began winding down when it lost a "big contract" and "before anything was filed."

134. Upon information and belief, Defendant C&M's operations have been continued by Defendant Reedy through Defendant GSM.

135. Upon information and belief, Defendants C&M and Reedy have transferred operations to Defendant GSM in order to avoid liability at issue in this case and in the pending EEOC matter.

136. On May 6, 2024, the EEOC issued a Letter of Determination with a "for cause" finding that there is reasonable cause to conclude that Defendants C&M and GSM subjected Plaintiff to a hostile work environment based on her sex (female) and sexual orientation and was discharged in retaliation for engaging in protected activity.

## COUNT I
### Willful Failure to Pay Overtime Wages in Violation of the FLSA
### (Individual FLSA Claim Against Defendants C&M, Reedy, and GSM)

137.    At all relevant times, Defendants C&M and Reedy were, and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

138.    Defendant GSM is a successor in interest to Defendant C&M.

139.    At all relevant times, Plaintiff was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207.

140.    On information and belief, at all relevant times, Defendants C&M has and had gross annual revenues in excess of $500,000.00.

141.    At all relevant times, Defendants C&M and Reedy employed Plaintiff within the meaning of the FLSA.

142.    At all relevant times, Defendants misclassified Plaintiff as an independent contractor.

143.    At all relevant times, Defendant Reedy asserted control of Defendant C&M's day-to-day operations where Plaintiff worked and made decisions regarding the amount that Plaintiff would be compensated, and is therefore an employer within the meaning of the FLSA.

144.  The overtime wage provisions set forth in the FLSA apply to Defendants C&M and Reedy and protect Plaintiff.

145.  The FLSA requires employers, such as Defendants C&M and Reedy, to compensate non-exempt employees, such as Plaintiff, at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per week.

146.  Defendants C&M and Reedy regularly, and as a routine policy and practice, failed to pay Plaintiff overtime wages at one-and-one half her regular rate for all time worked in excess of 40 hours per week.

147.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendants C&M and Reedy's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

148.  Defendants C&M and Reedy did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff.

149.  Defendant GSM is a successor in interest to Defendant C&M.

150.  Due to Defendants C&M and Reedy's FLSA violations, Plaintiff is entitled to recover from Defendants C&M, Reedy, and GSM her unpaid overtime wages for each workweek within the limitations period in which she worked in excess of 40 hours, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

## COUNT II
## <u>Hostile Work Environment Based on Sex in Violation of Title VII</u>
### (Against Defendants C&M and GSM)

151.    Defendant C&M subjected Plaintiff to severe and/or pervasive harassment based on her sex, which created a hostile work environment in violation of Title VII.

152.    As a consequence of the hostile work environment that Plaintiff endured, she experienced emotional distress, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

153.    The actions and inactions of Defendant C&M in subjecting Plaintiff to a severe and/or pervasive hostile work environment were willful, wanton, and/or in reckless disregard for Plaintiff's rights under Title VII.

154.    Defendant C&M acted with malice and/or with reckless indifference to Plaintiff's Title VII rights.

155.    Defendant GSM is a successor in interest to Defendant C&M.

156.    Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory damages, punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## COUNT III
## "Quid Pro Quo" Sexual Harassment in Violation of Title VII
### (Against Defendants C&M and GSM)

157.    Defendant C&M subjected Plaintiff to "quid pro quo" sexual harassment wherein her employment, and the terms and conditions of her employment, were made contingent upon her agreeing to engage in a sexual relationship with her.

158.    Defendant Daniels, a manager with supervisory authority over Plaintiff, repeatedly propositioned Plaintiff, his employee, to engage in a sexual relationship with him.

159.    Defendant Daniels, as an agent of Defendant C&M, conditioned Plaintiff's promotion with Defendant C&M, on Plaintiff's acceptance of Defendant Daniels' unwelcome sexual advances.

160.    As a consequence of the "quid pro quo" sexual harassment that she endured, Plaintiff experienced emotional distress, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

161.    Defendant C&M's actions and inactions in subjecting Plaintiff to "quid pro quo" sexual harassment were willful, wanton, and/or in reckless disregard for Plaintiff's rights under Title VII.

162.    Defendant C&M acted with malice and/or with reckless indifference to Plaintiff's Title VII rights.

24

163.    Defendant GSM is a successor in interest to Defendant C&M.

164.    Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory damages, punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## COUNT IV
## Sex Discrimination in Violation of Title VII
### (Against Defendants C&M and GSM)

165.    Plaintiff is a woman who identifies as a lesbian and is a member of a protected class.

166.    Defendant C&M discriminated against Plaintiff on the basis of her sexual orientation, including, but not limited to, subjecting her to disparate treatment and a hostile work environment and terminating her employment, in violation of Title VII.

167.    The above-pled discriminatory conduct constitutes unlawful sex discrimination in violation of Title VII.

168.    Defendant C&M acted in bad faith, willfully and wantonly disregarded Plaintiff's rights under Title VII, and acted in reckless disregard for her rights under Title VII.

169.    As a result of Defendant C&M's discriminatory conduct, Plaintiff has suffered lost wages and other benefits of employment, emotional distress, inconvenience, humiliation, and other indignities.

25

170.    Defendant GSM is a successor in interest to Defendant C&M.

171.    Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory damages, punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## COUNT V
## Retaliation in Violation of Title VII
**(Against Defendants C&M and GSM)**

172.    Defendant C&M subjected Plaintiff to severe and/or pervasive harassment based on her sex, which created a hostile work environment in violation of Title VII.

173.    Plaintiff engaged in protected activity under the Title VII by, inter alia, opposing discrimination, sexual harassment, and/or a hostile work environment in violation of Title VII.

174.    Defendant C&M retaliated against Plaintiff for opposing discrimination, sexual harassment, and/or a hostile work environment in violation of Title VII by, inter alia, disciplining and terminating Plaintiff.

175.    Defendant C&M's retaliation against Plaintiff would have dissuaded a reasonable person from engaging in protected activity.

176.    As a consequence of Defendant C&M's retaliation, Plaintiff experienced emotional distress, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

26

177. The actions and inactions of Defendant C&M in subjecting Plaintiff to retaliatory termination were willful, wanton, and/or in reckless disregard for Plaintiff's rights under Title VII.

178. Defendant C&M acted with malice and/or with reckless indifference to Plaintiff's Title VII rights.

179. Defendant GSM is a successor in interest to Defendant C&M.

180. Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory damages, punitive damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## COUNT VI
### Negligent Failure to Prevent Sexual Harassment
**(Against Defendants C&M and GSM)**

181. Defendant C&M had an affirmative obligation to provide a workplace free of sexual harassment.

182. Defendant C&M knew, or in the exercise of reasonable care, should have known of Defendant Daniels' propensity to sexually harass employees.

183. Defendant C&M failed to take action to prevent Defendant Daniels from sexually harassing employees, including Plaintiff.

184. Defendant C&M's failure to take action to prevent Defendant Daniels from sexually harassing employees, allowed and enabled Defendant Daniels to, inter alia, sexually harass Plaintiff in the workplace, and to commit the torts of civil

battery, civil assault, false imprisonment, and intentional infliction of emotional distress against Plaintiff.

185. The actions and inactions of Defendant C&M showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

186. Defendant C&M acted with the specific intent to harm Plaintiff.

187. As a direct and proximate result of Defendant C&M's failure to provide a workplace free of sexual harassment, Plaintiff was subjected to sexual harassment, civil battery, civil assault, false imprisonment, and intentional infliction of emotional distress, and suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

188. Defendant GSM is a successor in interest to Defendant C&M.

189. Plaintiff is entitled to recover compensatory and punitive damages against Defendants C&M and GSM in an amount to be determined by the enlightened conscience of the jury at trial.

## COUNT IV
### <u>Negligent and Wrongful Hiring and Supervision</u>
**(Against Defendants C&M and GSM)**

190. Defendant C&M knew or should have known that Defendant Daniels had the propensity to sexually harass females in the workplace, including through battery. Defendant C&M nevertheless continued to employ Defendant Daniels and

took no action to prevent Defendant Daniels' sexual harassment of female employees.

191. Defendant GSM is a successor in interest to Defendant C&M.

192. The negligence of Defendant C&M in retaining and supervising Defendant Daniels allowed and enabled him to, inter alia, commit the torts of civil battery, civil assault, false imprisonment, and intentional infliction of emotional distress against Plaintiff.

193. The actions and inactions of Defendant C&M showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

194. Defendant C&M acted with the specific intent to harm Plaintiff.

195. As a direct and proximate result of Defendant C&M's negligence, Plaintiff suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

196. Defendant GSM is a successor in interest to Defendant C&M.

197. Plaintiff is entitled to recover compensatory and punitive damages against Defendants C&M and GSM in an amount to be determined by the enlightened conscience of the jury at trial.

## COUNT V
## <u>Civil Battery</u>
## (Against Defendant Daniels)

198.   By intentionally touching Plaintiff on multiple occasions in attempt to have her agree to submit to his sexual advances, despite Plaintiff repeatedly rejecting them and notifying Defendant Daniels that they were unwelcome, Defendant Daniels committed the tort of civil battery by offensively touching Plaintiff.

199.   A reasonable person would find Defendant Daniels' unlawful touching of Plaintiff to be offensive.

200.   Defendant Daniels' actions showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

201.   Defendant Daniels acted with the specific intent to harm Plaintiff.

202.   As a direct and proximate result of Defendant Daniels' battery of Plaintiff, Plaintiff suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

203.   Defendant Daniels' conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

204. Plaintiff is entitled to recover compensatory and punitive damages against Defendant Daniels in an amount to be determined by the enlightened conscience of the jury at trial.

## COUNT VI
## Civil Assault
### (Against Defendant Daniels)

205. By relentlessly pursuing Plaintiff despite her rejection of his sexual advances, Defendant Daniels caused Plaintiff to reasonably apprehend a battery from Defendant Daniels' unlawful acts.

206. Defendant Daniels committed the intentional tort of civil assault.

207. Defendant Daniels' actions showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

208. Defendant Daniels acted with the specific intent to harm Plaintiff.

209. As a direct and proximate result of Defendant Daniels' assault on Plaintiff, Plaintiff suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

210. Defendant Daniels' conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

211. Plaintiff is entitled to recover compensatory and punitive damages against Defendant Daniels in an amount to be determined by the enlightened conscience of the jury at trial.

## COUNT VII
### False Imprisonment Pursuant to O.C.G.A. § 51-7-20
**(Against Defendant Daniels)**

212. By pushing Plaintiff against the wall and holding her there as he groped her breast, tried to undo her belt, exposed his erect penis, and ordered her to touch his erect penis, Defendant Daniels unlawfully detained Plaintiff and deprived her of her personal liberty, thereby committing the intentional tort of false imprisonment.

213. Defendant Daniels acted with the specific intent to harm Plaintiff.

214. As a direct and proximate result of Defendant Daniels' false imprisonment of Plaintiff, accomplished by physically pushing her against a wall in the back of the building and then holding her there by physical force while he sexually battered, exposed his erect penis, and ordered her to touch his erect penis, Plaintiff suffered physical pain, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

215. Defendant Daniels' conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

## COUNT VIII
### Conversion Pursuant to O.C.G.A. § 51-10-1
### (Against Defendants C&M, Reedy, and GSM)

216. Defendants C&M and Reedy wrongfully and intentionally retained Plaintiff's recording device.

217. Defendant GSM is a successor in interest to Defendant C&M.

218. Defendants C&M and Reedy retained the recording device despite Plaintiff's multiple requests for the return of the recording device.

219. Defendants C&M and Reedy retained the recording device unlawfully without the consent of Plaintiff and deprived her of the exercise and use of the recording device.

220. Defendants C&M and Reedy intend to permanently deprive Plaintiff of the recording device.

221. Plaintiff properly owned and/or had the right to use the recording device, not the Defendants C&M and Reedy.

222. Plaintiff is entitled to immediate possession of the recording device.

223. Defendants C&M and Reedy have wrongfully converted Plaintiff's recording device.

224. Defendants C&M and Reedy's wrongful conduct is of a continuing nature.

225.   Defendants C&M and Reedy's conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

226.   Plaintiff is entitled to recover from Defendants C&M, Reedy, and GSM all damages and costs permitted, including the recording device that Defendants wrongfully converted, compensatory and punitive damages.

## COUNT IX
### Trespass to Chattel Pursuant to O.C.G.A. § 51-1-3
### (Against Defendants C&M, Reedy, and GSM)

227.   Plaintiff had the right to possess the recording device.

228.   Defendant GSM is a successor in interest to Defendant C&M.

229.   Defendants Reedy and C&M intentionally interfered with and deprived Plaintiff of her right to possess the recording device by dispossessing her recording device, intermeddling with her recording device, and/or destroying her recording device.

230.   Defendants C&M and Reedy's conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

231.   As a consequence of the acts and omissions giving rise to this count, Plaintiff suffered pecuniary and emotional injuries and is entitled to recover

compensatory damages and punitive damages against Defendants C&M, Reedy, and GSM.

## COUNT X
### Intentional Infliction of Emotional Distress
**(Against All Defendants)**

232.   Defendants' actions, as alleged herein, were intentional or reckless.

233.   Defendants' actions, as alleged herein, were extreme and outrageous.

234.   Defendants subjected Plaintiff to extreme and outrageous misconduct of a sexual and/or retaliatory nature, pursuant to a culture permitting and encouraging such conduct.

235.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered extreme emotional distress and humiliation, including anxiety, depression, and post-traumatic distress disorder.

236.   Plaintiff continues to suffer emotional trauma from the events.

237.   Defendants' actions showed willful misconduct, malice, wantonness, oppression, and the entire want of care which would raise the presumption of conscious indifference to consequences.

238.   Defendants acted with the specific intent to harm Plaintiff.

239.   Defendants intended to inflict severe emotional distress and knew that their acts of sexual harassment, assault, battery, conversion, trespass to chattel, and/or retaliation would inflict extreme emotional distress.

35

240. Defendants' conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

241. Defendant GSM is a successor in interest to Defendant C&M.

242. Plaintiff is entitled to recover compensatory and punitive damages against Defendants in an amount to be determined by the enlightened conscience of the jury at trial.

**COUNT XI**
**Punitive Damages Pursuant to O.C.G.A. § 51-12-5.1**
**(Against All Defendants)**

243. Defendants' actions, as described herein, showed willful misconduct, malice, wantonness, oppression, and the entire want of care which would raise the presumption of conscious indifference to consequences.

244. Defendants acted with the specific intent to harm Plaintiff.

245. Defendant GSM is a successor in interest to Defendant C&M.

246. Plaintiff is entitled to unlimited punitive damages against Defendants C&M and Daniels, pursuant to O.C.G.A § 52-12-5.1.

**COUNT XII**
**Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11**
**(Against All Defendants)**

247. Defendants' tortious conduct as described herein was in bad faith and caused Plaintiff unnecessary trouble and expense.

36

248.    Defendant GSM is a successor in interest to Defendant C&M.

249.    Pursuant to O.C.G.A. § 13-6-11, Defendants are liable for Plaintiff's expenses of litigation, including reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)    A declaratory judgment that Defendants' practices complained of herein are unlawful;

b)    Full lost wages and benefits;

c)    All owed overtime wages and liquidated damages owed to Plaintiff;

d)    Compensatory damages in an amount to be determined by a jury;

e)    Punitive damages in an amount to be determined by a jury;

f)    Injunctive relief requiring the return of Plaintiff's recording device and tape that she had the right to possess;

g)    An award of prejudgment and post-judgment interest;

h)    Attorney's fees and costs; and

i)    All other equitable and other further relief as the Court deems just and proper.

Respectfully submitted, this 29th day of January 2025.

/s/ Grace A. Starling
Justin M. Scott

37

Georgia Bar No. 557463
Grace A. Starling
Georgia Bar No. 464958
RADFORD SCOTT LLP
125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@radfordscott.com
gstarling@radfordscott.com

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| MAKITA BRYANT, | |
| Plaintiff, | Civil Action No. 1:23-cv-05848-MHC |
| v. | |
| C&M DEFENSE GROUP LLC, CHARLES REEDY, JR., and REGINALD DANIELS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 29th, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record, and will serve the foregoing via First Class U.S. Mail addressed as follows:

Reginald Daniels
121 Escalade Cir, McDonough, GA 30253

Respectfully submitted, this 29th day of January 2025.

*/s/ Grace A. Starling*
Justin M. Scott
Georgia Bar No. 557463
Grace A. Starling
Georgia Bar No. 464958
RADFORD SCOTT LLP
125 Clairemont Avenue, Suite 380

39

Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@radfordscott.com
gstarling@radfordscott.com

*Counsel for Plaintiff*