## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MAKITA BRYANT,<br><br>    Plaintiff,<br><br>v.<br><br>C&M DEFENSE GROUP LLC,<br>CHARLES REEDY, JR., REGINALD<br>DANIELS, and GLOBAL SECURITY<br>MANAGEMENT TEAM LLC,<br><br>    Defendants. | Civil Action No. 1:23-cv-05848-AWH<br><br>**JURY TRIAL DEMANDED**<br><br>Conference (☒) is (☐) is not requested |

## PROPOSED THIRD AMENDED PRETRIAL ORDER

Plaintiff Makita Bryant ("Plaintiff") and Defendant C&M Defense Group LLC ("C&M"), Defendant Charles Reedy ("Reedy"), and Defendant Global Security Management Team LLC ("GSM") ("Defendants"), hereby request that trial be set for the week of January 12, 2026 and move to amend the Pretrial Order as follows:

**1.**

**There are no motions or other matters pending for consideration by the court except as noted:**

**Response:** There are no motions currently pending.

**2.**

**All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall,**

however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

**Response:** The Parties have completed discovery.

**3.**

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**Response:** The names of the Parties are correct, and no party has raised any

contention regarding the misjoinder or non-joinder of any parties.

**4.**

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**Response:** There is no question as to jurisdiction. The Court has

federal-question jurisdiction over Plaintiff's FLSA and Title VII claims pursuant to

28 U.S.C. §§ 1331 and 1343. Pursuant to 28 U.S.C. § 1367, this Court has

supplemental jurisdiction over Plaintiff's state law claims because such claims are

so related to Plaintiff's employment claims brought under federal law that they form

part of the same case or controversy.

**5.**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiff:**        Justin M. Scott
                Grace A. Starling
                Tierra Monteiro

2

Radford Scott LLP
125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Telephone: 678.780.4880
jscott@radfordscott.com
gstarling@radfordscott.com
tmonteiro@radfordscott.com

**Defendants:**    Caleb Avraham, Esq.
The Law Offices
of Caleb Avraham, LLC
3101 Cobb Pkwy SE, Suite 124
Atlanta, Georgia 30339
Telephone: (202) 360-3522
caleb@avrahamlegal.com

**Other Parties (specify):** Not applicable.

**6.**

**Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)).  State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.**

**Response:** None.

**7.**

**The captioned case shall be tried (__☒__) to a jury or (__☐__) to the court without a jury, or (__☐__) the right to trial by jury is disputed.**

**8.**

**State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.**

**Response:** The Parties jointly request that the trial be bifurcated in two phases: Phase I for all non-punitive damages, excluding attorneys' fees and costs; Phase II for the amount of punitive damages.

In cases where punitive damages under state law are at issue, Courts are required under O.C.G.A. § 51-12-5.1 to bifurcate the trial so that the jury determines "liability, the amount of compensatory damages, and liability for punitive damages in the first phase and the amount of punitive damages in the second phase." *See Bolden v. Ruppenthal*, 286 Ga. App. 800, 804 (2007). Given the need to bifurcate the state law punitive damages claim, the Parties also request that the question of the amount of punitive damages for Plaintiff's Title VII claims be bifurcated as well, pursuant to Federal Rule of Civil Procedure 42(b). Fed. R. Civ. P. 42 ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues…).

The Parties further jointly request that the Court conduct a separate post-trial hearing on attorneys' fees and costs as required under Georgia law. *See Giovanno v. Fabec*, 804 F.3d 1361, 1366-1367 (11th Cir. 2015); *see also Evers v. Evers*, 277 Ga. 132, 587 S.E.2d 22, 23 (Ga. 2003) ("A hearing is required in order to enter an award of attorney['s] fees."). For convenience, the Parties additionally request that the applicable attorneys' fees and expenses for Plaintiff's federal claims be determined at the same post-trial hearing. *See* Fed. R. Civ. P. 42(b).

4

**9.**

**Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.**

**Response:** The Parties do not request that the Court propound any additional

qualifying questions and/or a juror questionnaire beyond what is stated in the Court's

Standing Order Regarding Civil Litigation.

**10.**

**Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.**

**Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.**

**Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.**

**The court shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any.  Counsel may be permitted to ask follow-up questions on these matters.  It shall not, therefore, be necessary for counsel to submit questions regarding these matters.  The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.**

**Response:** Plaintiff attaches her proposed voir dire questions as Attachment

B-1.  Defendants attach their proposed voir dire questions as Attachment B-2.

**11.**

**State any objections to Plaintiff's voir dire questions:**

**Response:** Defendants have no objections to Plaintiff's voir dire questions.

5

**State any objections to Defendant's voir dire questions:**

    **Response:** Not applicable.

**State any objections to the voir dire questions of the other parties, if any:**

    **Response:** Not applicable.

<div align="center">

**12.**
</div>

    **All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by <u>28 U.S.C. § 1870</u>. <u>See</u> <u>Fed. R. Civ. P. 47(b)</u>.**

    **Response:** The Court will empanel six (6) jurors and two (2) alternates. The

Parties do not request additional strikes.

<div align="center">

**13.**
</div>

    **State whether there is any pending related litigation. Describe briefly, including style and civil action number.**

    **Response**: None.

<div align="center">

**14.**
</div>

**Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.**

<div align="center">

6
</div>

**15.**

**Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.**

**16.**

**Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the noncooperating counsel.**

**17.**

**The legal issues to be tried are as follows:**

    **Response:**

    1.    The damages to which Plaintiff is entitled; and

    2.    The expenses of litigation, including reasonable attorneys' fees and

costs, to which Plaintiff is entitled.[1]

---

[1] The Parties jointly request that the Court conduct a separate post-trial hearing on attorneys' fees and costs as required under Georgia law. *See Giovanno v. Fabec*, 804 F.3d 1361, 1366-1367 (11th Cir. 2015); *see also Evers v. Evers*, 277 Ga. 132, 587 S.E.2d 22, 23 (Ga. 2003) ("A hearing *is* required in order to enter an award of attorney['s] fees."). For convenience, the Parties additionally request that the applicable attorneys' fees and expenses for Plaintiff's federal claims be determined at the same post-trial hearing. *See* Fed. R. Civ. P. 42(b).

**18.**

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

**19.**

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular

**plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.**

**Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.**

**Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.**

**Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.**

<div align="center">

**20.**
</div>

**The following designated portions of the testimony of the persons listed below may be introduced by deposition:**

**Response:** The Parties do not anticipate introducing any testimony by deposition, except for purposes of impeachment, unless a witness is unavailable for trial or is outside the Court's subpoena power. To the extent this Court permits either party to offer only part of a deposition in evidence for purposes other than impeachment, the Parties reserve the right to require the party offering the testimony to introduce other parts of the deposition which ought to be considered in fairness, and to themselves introduce any other parts of the deposition, pursuant to Fed. R.

<div align="center">

9
</div>

Civ. P. 32(a)(6). The Parties also reserve the right to object to the admissibility of those portions of depositions the opposing party may seek to introduce at trial, pursuant to Fed. R. Civ. P. 32(b).

**Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.**

**21.**

**Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.**

**Response:** Plaintiff has submitted her trial brief.

**22.**

**In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.**

**Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar,**

**counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.**

**23.**

**If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.**

**Response**: The Parties have submitted their Joint Request to Charge with Proposed Instructions and Verdict Form for both Phases I and II. [Docs. 91, 91-1, 91-2, and 91-3].

**24.**

**Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.**

**Response:** Pursuant to this Court's Standing Order on Civil Litigation, the Parties agree to twenty minutes for opening and one-half hour for argument per side.

**25.**

**If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.**

**26.**

**Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind parties had a telephone conference on March 14, 2025, to discuss in good faith the possibility of settlement of this case. The court (__☐__) has or (__☒__) has not discussed settlement of this case with counsel. It appears at this time that there is:**

(__☐__) A good possibility of settlement.

(__☐__) Some possibility of settlement.

(__☒__) Little possibility of settlement.

(__☐__) No possibility of settlement.

**27.**

**Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.**

**Response**: The Parties request that trial be specially set for January 12, 2026.

**28.**

**Plaintiff estimates that it will require <u>2-3 days</u> to present her evidence to a jury. The Defendants estimate that it will require <u>1-2 days</u> to present their evidence. The other parties estimate that it will require <u>N/A</u> days to present their evidence.  It is estimated that the total trial time is <u>3-5</u> days.**

**29.**

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (_____) submitted by stipulation of the parties or ( _XX_ ) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice.  Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this _____17th_____ day of ____December____, 2025.

_____

THE HONORABLE ANNA W. HOWARD
UNITED STATES MAGISTRATE JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

Respectfully submitted, this 7th day of November 2025.

<u>/s/ Grace A. Starling</u>
Justin M. Scott
Georgia Bar No. 557463
Grace A. Starling
Georgia Bar No. 464958
Tierra M. Monteiro
Georgia Bar No. 743224
RADFORD SCOTT LLP
125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Telephone: 678.780.4880
jscott@radfordscott.com
gstarling@radfordscott.com
tmonteiro@radfordscott.com


*Counsel for Plaintiff*

<u>/s/ Caleb Avraham</u>
Caleb Avraham, Esq.
Georgia Bar No. 814692
THE LAW OFFICES
OF CALEB AVRAHAM, LLC
3101 Cobb Pkwy SE, Suite 124
Atlanta, Georgia 30339
Telephone: (202) 360-3522
caleb@avrahamlegal.com

*Counsel for Defendant*

14

**ATTACHMENT A**

**LIST OF QUESTIONS
CONCERNING JURORS' LEGAL QUALIFICATIONS**

The Parties understand that this Court propounds its own qualifying questions and juror questionnaire as stated in the Standing Order for Civil Litigation. In response to Section 9 of the Proposed Pretrial Order, the Parties do not request that the Court propound additional qualifying questions and/or a juror questionnaire.

**ATTACHMENT B-1**

**GENERAL QUESTIONS WHICH PLAINTIFF REQUESTS BE PROPOUNDED TO THE JURORS ON VOIR DIRE EXAMINATION**

Plaintiff submits the following proposed voir dire questions to be submitted to the jury panel in this case. If a question is answered in the affirmative by a proposed juror, Plaintiff respectfully requests leave to ask follow-up questions:

1. This is a case in which our client, Makita Bryant, asserts several claims against her former employers, C&M Defense Group LLC and Charles Reedy, stemming from sexual harassment, assault, and retaliation. Do any of you know of any reason why you would have any difficulty being a juror in this type of case or in assessing any legal responsibility involving the parties in this case?

2. Do you or any member of your family have a business relationship with Defendants C&M Defense Group, Charles Reedy, and/or Global Security Management Team LLC, such that you or a member of your family receives income for services, goods or advice provided to or from the Defendants?

3. Do you or any member of your family have a social relationship with Defendants C&M Defense Group, Charles Reedy, and/or Global Security Management Team LLC?

4. Do you have any interest, financial or otherwise, in the outcome of this case?

5. Have you experienced sexual harassment in the workplace?

6. Has anyone in your family experienced sexual harassment in the workplace? If yes, what was the nature of the harassment?

7. Have you reported or complained about any kind of harassment in the workplace, for example, by speaking to human resources or someone

16

in management? If yes, please tell us what the complaint was and the outcome of your complaint.

8.      Have you or anyone in your family ever accused his or her employer of violating federal or state law?

9.      Have you ever been accused of failing to compensate an employee for overtime wages for all hours worked?

10.     Have you ever been accused of sexual harassment or assault?

11.     Have you ever been accused of failing to compensate an employee for overtime wages for all hours worked?

12.     Have you ever been a witness to sexual harassment in the workplace?

13.     Have you ever worked at a job that required you to track employee hours and wages, or required you to ensure that employees were properly paid for the hours they worked?

14.     Does anyone here feel that it should not be against the law for an employer to fail to pay its employees overtime wages?

15.     Does anyone here feel that it should not be against the law for an employer to fail to prevent sexual harassment by one of its employees?

16.     Does anyone feel that employers should be allowed to retaliate against employees who report violations of rules, laws, or regulations?

17.     Have you, or members of your family, ever served in a management position with a company?

18.     Have you ever owned your own business?

19.     Do you supervise or manage other employees in your job?

20.     Have you ever managed someone who was accused of sexual harassment?

21.    Have you or anyone in your family ever worked in a human resources capacity for a company, whether or not your job title was or contained the words "human resources?"

22.    Do you have any education or training in human resources?

23.    Have you ever received training on compliance under Title VII of the Civil Rights Act of 1964?

24.    Have you ever received training on compliance with Georgia anti-sexual harassment law?

25.    Have you ever received training on compliance under the Fair Labor Standards Act?

26.    Do you belong to any clubs, groups, or volunteer organizations?

27.    Have you gone to law school or received any other legal training?

28.    Have you ever worked in the legal field?

29.    Do you believe that our civil jury system is not a fair way to resolve legal disputes?

30.    Does anyone have a religious, political, or other spiritual objection to the filing of civil lawsuits seeking monetary damages?

31.    Are there any situations where it would be unreasonable or wrong to hold an employer responsible for the acts of its managers? What might those be?

32.    Has anyone ever filed a lawsuit?  If so, what were your claims?

33.    Has anyone ever been sued?  If so, what were the claims against you?

34.    Is there anyone who believes that it is wrong to file a lawsuit or who would be suspicious of someone who filed a lawsuit?

18

35.     Other than what you have already told us, have any of you had any experience that you think might influence your function as a juror in this case? If so, please describe that.

36.     Now that you know more about the nature of this case, do any of you know of any reason why you would not be able to serve as a juror in this case or would prefer not to serve as a juror in this case?

**ATTACHMENT B-2**

**GENERAL QUESTIONS WHICH DEFENDANTS REQUEST BE PROPOUNDED TO THE JURORS ON VOIR DIRE EXAMINATION**

The Defendants have reviewed the Plaintiff's proposed voir dire questions (Questions 1-36). The Defendants have no additional voir dire questions to present to the jury at this time. However, the Defendants respectfully reserve the right to ask follow-up questions to each of Plaintiff's voir dire questions if deemed applicable during the voir dire examination.

**ATTACHMENT C**
**Plaintiff's Outline of the Case**

I.    **PLAINTIFF'S CLAIMS**

Plaintiff asserts the following claims:

- Count I: Plaintiff asserts claims against Defendants for failure to pay overtime in violation of the FLSA;

- Count II: Plaintiff asserts claims against C&M and GSM for hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII");

- Count III: Plaintiff asserts claims against C&M and GSM for *quid pro quo* harassment in violation of Title VII;

- Count IV: Plaintiff asserts claims against C&M and GSM for discrimination based on sexual orientation in violation of Title VII;

- Count V: Plaintiff asserts claims against C&M and GSM for retaliation for engaging in protected activity in violation of Title VII;

- Count VI: Plaintiff asserts claims against C&M and GSM under Georgia state law for negligent failure to prevent sexual harassment;

- Count VII: Plaintiff asserts claims against C&M and GSM under Georgia state law for negligent and wrongful hiring and supervision;

21

- Count XI:[2] Plaintiff asserts claims against Defendants under Georgia state law for conversion of property;

- Count XII: Plaintiff asserts claims against Defendants under Georgia state law for trespass to chattel;

- Count XIII: Plaintiff asserts claims against Defendants under Georgia state law for intentional infliction of emotional distress;

- Count XIV: Plaintiff asserts claims against Defendants under Georgia state law for punitive damages pursuant to O.C.G.A. § 51-12-5.1; and

- Count XV: Plaintiff asserts claims against Defendants under Georgia state law for attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

Defendant GSM is a successor in interest to Defendant C&M. Defendants stipulated to liability and damages on Count I. Further, Defendants stipulated to liability on Counts II, III, IV, V, VI, VII, XI, XII, XIII, XIV, and XV, and all necessary elements of proof for liability on such claims.

---

[2] Counts VIII, IX, and X of Plaintiff's Complaint are against Defendant Daniels, who is in default. [Docs. 45 and 57]. Plaintiff requests a separate hearing, following the trial, to determine damages as to Defendant Daniels pursuant to Federal Rule of Civil Procedure 55(b)(2).

## II.   **FACTUAL SUMMARY**

Plaintiff began working for Defendant C&M as a Security Officer in approximately April 2021. Defendants C&M and Reedy employ, and have employed in the statutory period, a number of individuals as Security Officers, who they pay on an hourly basis and misclassify as independent contractors.

Throughout the period in which Defendants C&M and Reedy misclassified Plaintiff as an independent contractor, Defendants C&M and Reedy paid Plaintiff a set hourly rate of $15.00 for all time worked on the clock. While Defendants misclassified Plaintiff as an independent contractor, Plaintiff was, at all times, an employee of Defendants. Defendants provided Plaintiff with her schedule, worksites, shifts, and her uniform, including her shirt and tactical vest. Plaintiff did not have the ability to turn down work. Plaintiff made little to no investment in Defendants' business. Defendants were solely responsible for generating the schedule of available shifts for Security Officers, including Plaintiff. Defendants dictated Plaintiff's hourly pay.

Plaintiff's wages depended entirely on the number of hours she worked at the rates set by Defendants. Managerial skill and individual initiative were not material factors in Plaintiff's compensation because, *inter alia*, her job duties were assigned and controlled by Defendants, Defendants controlled her schedules, and Plaintiff was solely compensated based on the number of hours she worked at rates set by

23

Defendants. Plaintiff regularly worked more than forty (40) hours per workweek without being paid one-and-one-half times the regular rate of pay for all overtime worked. At times throughout Plaintiff's employment, Plaintiff was required to work over one hundred hours a week and was not paid one-and-one-half times her regular rate of pay for all overtime worked. Defendants C&M and Reedy knew or should have known that Plaintiff worked in excess of forty (40) hours per workweek. Each and every week that Plaintiff worked in excess of forty (40) hours per week, Defendants C&M and Reedy failed to pay her overtime wages for time worked in excess of forty (40) hours per week. Despite Defendants' knowledge of overtime worked by Plaintiff, Defendants continued their practice of misclassifying Plaintiff as an independent contractor. Defendants C&M and Reedy regularly, and as a routine policy and practice, failed to pay Plaintiff at a rate of one-and-one-half times her regular rate of pay for all time worked in excess of forty (40) hours per workweek.

In January 2022, while Plaintiff was working at one of the worksites, Mr. Daniels showed up at the end of her shift, said that he did not want to go home, and asked if Plaintiff wanted to go to a strip club. Plaintiff told him that she did not want to go to a strip club. Mr. Daniels then asked her if she wanted to get some food and talk. Plaintiff felt that she had to agree because Mr. Daniels was her boss. Plaintiff and Mr. Daniels then went to American Deli and took their food to Mr. Daniels'

company car. While in Mr. Daniels' company car, Mr. Daniels asked if he could give Plaintiff a hug. Mr. Daniels then began rubbing Plaintiff's back and pulling her shirt out of the back of her pants. Plaintiff, who was startled and frightened by Mr. Daniels' actions, asked Mr. Daniels to stop. Mr. Daniels then asked Plaintiff when she "got laid" last. Mr. Daniels asked Plaintiff to let him "get [her] off." Plaintiff rejected Mr. Daniels' advances and was visibly uncomfortable.

Despite Plaintiff's protestations, Mr. Daniels continued and told Plaintiff that she was making "something get hard in [his] pants, between [his] legs," referring to his erect penis. Plaintiff again protested and stated that she was uncomfortable. Mr. Daniels apologized and said that he went too far "unless [Plaintiff] wanted to." Mr. Daniels then suggested that he get a hotel room for him and Plaintiff for the night. Plaintiff told him no and that she was uncomfortable because he was her manager. Plaintiff then got out of the car. Plaintiff was emotionally distraught following these events.

Plaintiff told her now-deceased aunt what Mr. Daniels did to her, and her aunt provided her with a recording device to use in case Mr. Daniels sexually harassed or assaulted her again. Plaintiff began carrying the recording device with her out of fear that Mr. Daniels would sexually harass and assault her again.

About a month later, in February 2022, while Plaintiff was working by herself in the guard shack at the worksite in Forest Park, Mr. Daniels showed up and said

25

that he wanted to go look inside the building with Plaintiff because Defendant C&M had recently lost the contract with the worksite. Plaintiff went into the building with Mr. Daniels as he requested.

Once inside the building, Plaintiff noticed that all of the security cameras had been taken down. Plaintiff believes that this was a result of Defendant C&M's contract ending. Defendant then stated, "Yeah, it is empty in here," walked to the very back of the building area, and asked Plaintiff to come with him. Mr. Daniels then asked Plaintiff, "Why haven't you tried to reach out to me?" Mr. Daniels asked Plaintiff to have sex with him. Mr. Daniels stated that he and Plaintiff "can do it here." Plaintiff told him again that she was not comfortable, that she did not want to have sex with him, and that he was married. In response, Mr. Daniels told Plaintiff to let him worry about his wife. Mr. Daniels then asked Plaintiff, "Have you gotten laid yet?" Mr. Daniels then pushed Plaintiff up against the wall, grabbed and groped Plaintiff's breast, and tried to undo her belt. Mr. Daniels kept Plaintiff up against the wall, unzipped his pants, fully exposed his erect penis to Plaintiff, and ordered her to touch his erect penis. Plaintiff, who was frightened that Mr. Daniels was going to force her to touch his penis and then rape her, told him no and that a truck would be showing up at the worksite soon, as an excuse to get away from him.

After this, Plaintiff was able to escape from Mr. Daniels and quickly went outside of the building. Mr. Daniels followed Plaintiff out of the building and said,

"You need to let me take care of you" and began discussing a promotion for Plaintiff. Mr. Daniels offered to do some "favors" for Plaintiff, including paying to have Plaintiff's car fixed. Plaintiff rejected Mr. Daniels' advances and requests for sexual acts in exchange for a promotion and "favors." At one point, in response to Plaintiff's opposition, Defendant Daniel stated, "I do not know why you do not like me." Mr. Daniels also stated, "You need to let me get you off or a female or we could have fun with a friend" or words to that effect. He also told Plaintiff that she needed to give him a chance.

Plaintiff is a lesbian. Mr. Daniels knew this and made sexual comments related to Plaintiff's sexuality. Plaintiff audio recorded the February 2022 sexual harassment and assault on her recording device, which was inside her tactical vest. From February 2022 to December 2022, Mr. Daniels continued to ask Plaintiff if she had "gotten laid yet."

In December 2022, Mr. Daniels called Plaintiff on the phone while she was working at the Fairburn GXO Tesla worksite, asked when the employees were going on break, and said, "I bet you won't go in the bathroom during the break and play with yourself. I am horny. I bet you are not freaky enough to go in the bathroom and play with yourself and FaceTime me and let me watch." Plaintiff was disgusted by Mr. Daniels' sexual requests and once again rejected his advances.

On March 31, 2023, around 1:30 a.m., Defendant Reedy came to the GXO Tesla worksite while Plaintiff was working, and informed Plaintiff that Mr. Daniels was no longer employed with Defendant C&M and that Defendant C&M had lost the contract where Plaintiff was working. Defendant Reedy stated that Mr. Daniels had been stealing from him and that he heard rumors that Mr. Daniels was sexually harassing people at his company. Plaintiff then complained to Defendant Reedy that she was sexually harassed and assaulted by Mr. Daniels on multiple occasions while working for Defendants.

Following her report, Plaintiff went to her car to retrieve the recording device with the audio recording from the February 2022 sexual harassment and assault on it. Plaintiff then provided the recording device with headphones and tape to Defendant Reedy and informed him that she had an audio recording of what Mr. Daniels did to her in February 2022 on it and that he could review the recording and return it to her. Defendant Reedy asked to keep the recording device, took possession of the recording device, and promised to review and return it to Plaintiff quickly.

On March 31, 2023, at 4:13 p.m., following the meeting between Defendant Reedy and Plaintiff when Plaintiff reported Mr. Daniels' sexual harassment and assault, Plaintiff sent Defendant Reedy a text message asking when she could get the recording device back. Plaintiff told Defendant Reedy that her deceased aunt's voice was on the other side of the tape. Mr. Reedy did not respond to the message. In

subsequent messages to Defendant Reedy and Ms. Michelle Hudley, Vice President of Defendant C&M, Plaintiff asked for the return of the recording device, headphones, and tape.

On April 2, 2023, Plaintiff called Defendant Reedy, and he said he was working on the schedule and would give Plaintiff a new site soon. On April 2, 2023, Hudley then reassigned Plaintiff to another site location at 585 DeKalb Industrial Way, Decatur, Georgia 30033. Ms. Bryant worked at the site location on April 2, 2023 and April 3, 2023. On April 3, 2023, Hudley gave Plaintiff another worksite for her shift on April 4, 2023. Following her shift on April 3, 2023, Defendant Reedy texted Plaintiff and said, "Hi Markita [sic], Michelle gave you a post to go to tomorrow. Do not report there. That post was already filled." Plaintiff proceeded to ask why she was fired and again requested the return of the recording device with the February 2022 events on it. Defendant Reedy did not respond to Plaintiff. On April 4, 2023, Plaintiff texted Hudley asking if she was terminated and if it was because of the tape recording. Hudley did not respond.

From April 4, 2023 to April 10, 2023, Plaintiff requested placement at another worksite, requested the recording device, headphones, and tape back from Defendants, and received no response from Defendants. On April 5, 2023, Plaintiff texted Defendant Reedy and said, among other things, "I have asked for the tape recorder back for several days now" and "I gave you the entire tape recorder, ear

phones as well as the tape inside in good faith so that you could hear the harassment at Gxo Tesla in Fairburn, Ga on Friday, March 31,2023 [sic] at approximately 2:00 am." Plaintiff also texted Defendant Reedy to again inform him that her deceased aunt's voice was on the other side of the tape and that it was all that her family had left of her talking. On April 5, 2023, Plaintiff texted Hudley a similar message requesting the recording device back. Defendant Reedy did not respond to Plaintiff's messages.

On April 7, 2023, Plaintiff texted Defendant Reedy and said, "When are you going to give me the tape recorder back it doesn't belong to me I gave it to you so that you could hear the harassment from Mr. Daniels." Defendant Reedy again did not respond to Plaintiff. On April 7, 2023, Plaintiff texted Hudley and again asked, "Can I please have my Aunt's tape recorder back with the tape and earphones please. You said you would make sure I got it back." Hudley did not respond to Plaintiff's request for the recording device back.

On April 11, 2023, Hudley stated, "[W]e don't have anything open at this moment." Defendant C&M and Defendant Reedy terminated Plaintiff following her report of sexual harassment and assault. On April 14, 2023, Plaintiff, through her counsel, sent an evidence preservation notice and demanded that her recording device, her personal property, be returned within seven calendar days. Defendant Reedy did not return the recording device.

30

Plaintiff performed her job well and received nothing but praise for her work up until her report of Mr. Daniels' harassment. Defendant C&M and Reedy terminated Plaintiff in retaliation for her report of sexual harassment and assault by Mr. Daniels.

Plaintiff has suffered financial loss, emotional distress, humiliation, inconvenience, and loss of enjoyment of life. Plaintiff has also suffered physical, mental, and emotional damages because of Defendants' actions, including anxiety, depression, and post-traumatic distress disorder. Defendants' actions and inactions were willful, wanton, and in reckless disregard for Plaintiff's rights.

On or about September 27, 2023, Defendant C&M filed a position statement with the EEOC responding to Plaintiff's EEOC Charge. Shortly thereafter, on October 18, 2023, Defendant Reedy filed for a Name Reservation for "Global Security Management Team" through the Secretary of State of Georgia. The name reservation became effective on October 23, 2023 and was effective for thirty days. On November 11, 2023, Defendant Reedy filed the Articles of Organization for Global Security Management Team LLC with its principal office address as 2555 Delk Rd, Ste A-10, Marietta, Georgia 30067 and listed himself as the registered agent and organizer. The Articles of Organization took effect on November 24, 2023. On December 26, 2023, Defendant Reedy filed Defendant GSM's Annual Registration for 2023 and 2024.

31

In April 2024, the EEOC informed Defendants C&M and GSM that it was recommending a "for cause" finding and that it would issue a Letter of Determination against the Defendants pending approval. Following the EEOC's notification to Defendants of the "for cause" finding against them, on April 16, 2024, Defendant Reedy filed to terminate Defendant C&M through the Secretary of State of Georgia. The termination took effect on April 17, 2024.

On April 26, 2024, counsel for Defendants C&M and Reedy informed Plaintiff's counsel that Defendant C&M began winding down when it lost a "big contract" and "before anything was filed." Defendant C&M's operations have been continued by Defendant Reedy through Defendant GSM. Defendants C&M and Reedy have transferred operations to Defendant GSM in order to avoid liability at issue in this case and in the pending EEOC matter.

On May 6, 2024, the EEOC issued a Letter of Determination with a "for cause" finding that there is reasonable cause to conclude that Defendants C&M and GSM subjected Plaintiff to a hostile work environment based on her sex (female) and sexual orientation and was discharged in retaliation for engaging in protected activity.

III.    **APPLICABLE LEGAL STANDARDS AND RELEVANT LAW**

A.    **FLSA Failure to Pay Overtime**

The Parties stipulated to liability and damages on Count I. The Parties incorporate the April 30, 2025 stipulation and the October 1, 2025 stipulation by reference herein. [Docs. 60 and 88]. The Parties stipulated as follows with respect to the damages owed by Defendants for Count I: Plaintiff shall be awarded $11,141.69 in unpaid overtime wages and an equal amount ($11,141.69) in liquidated damages against Defendants C&M, GSM, Reedy. Per the Parties' prior submission [Doc. 79], the Parties stipulate that attorneys' fees and costs will be determined by the Court in a post-trial hearing.

B.    **Title VII of the Civil Rights Act of 1964[3]**

Title VII of the Civil Rights Act prohibits employers from discriminating in the workplace on the basis of an individual's sex. 42 U.S.C. § 2000e-2(a). Title VII prohibits an employer from discriminating against any employee based on sex or retaliating against "any . . .employee[ ] . . . because [s]he has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000 *et seq*.

---

[3] With respect to Plaintiff's Title VII claims, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issued a "Cause" finding and the Notice of Right to Sue ("NTRS").

### 1.    Hostile Work Environment

To prove a hostile work environment under Title VII based on unwelcome sexual harassment, Plaintiff must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010). "Workplace conduct is not measured in isolation." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). Rather, the evidence of harassment is considered both cumulatively and in the totality of the circumstances. *See Reeves*, 594 F.3d at 808. Either severity *or* pervasiveness is sufficient to establish a violation of Title VII. *Id.* (citations omitted). In evaluating allegedly discriminatory conduct, consider its "frequency . . . ; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citations omitted).

### 2.    Quid Pro Quo Harassment

Title VII prohibits an employer from requiring sexual consideration from an employee as a *quid pro quo* for job benefits. In order to establish a *prima facie* case of *quid pro quo* sexual harassment against an employer, the employee must prove: (1) that the employee belongs to a protected group, (2) that the employee was subject to unwelcome sexual harassment, (3) that the harassment complained of was based on sex, and (4) that the employee's reaction to the harassment complained of affected tangible aspects of the employee's compensation, or terms, conditions or privileges of employment. *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1564 (11th Cir. 1987).

A *quid pro quo* theory requires a plaintiff to establish that her supervisor made a sexual advance toward her in exchange for an express or implied job benefit, and that she suffered from a tangible employment action after she declined the supervisor's sexual advance. *Farley v. Am. Cast Iron Pipe Co.*, 115 F. 3d 1548, 1552-23 (11th Cir. 1997).

### 3.    Discrimination Based on Sexual Orientation

Title VII prohibits an employer from discriminating against any employee based on sex. 42 U.S.C. § 2000e-2. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 650-652 (2020) (An employer who fires an individual for being gay violates Title VII). The words "discriminate against," the Court has explained, refer to

35

"differences in treatment that injure" employees. *Id.* at 681. Additionally, "an unlawful employment practice is established when the complaining party demonstrates that [sex] was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

### 4. Retaliation

Title VII prohibits an employer from retaliating against "any . . .employee[ ] . . . because [s]he has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3. To establish a retaliation claim, an employee must demonstrate that they (1) engaged in protected activity; (2) suffered an adverse action; (3) suffered the adverse action because they engaged in protected activity; and (4) suffered damages because of the adverse employment action. See Eleventh Cir. Jury Instructions No. 4.22. The burden-shifting McDonnell-Douglas paradigm does not apply at trial. *Tynes v. Florida Dep't of Juvenile Justice*, 88 F.4th 939, 947-48 (11th Cir. 2023). Retaliation claims require "but for" causation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

### 5. For Cause Finding

After investigation into a Charge of Discrimination, "the EEOC may either determine that there is not reasonable cause to believe the charge is true and dismiss the charge or determine that there is reasonable cause to believe that charge is true." *Renta v. Cigna Dental Health, Inc.*, 2009 WL 4421245, at *1 (S.D. Fla. Nov. 24,

2009).  "[A]n EEOC determination is ordinarily admissible[]" so long as the EEOC determination is placed in the 'proper context.'" *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1288 (11th Cir.2008). This can be done by presenting evidence at trial. *Id*. "A court may also issue an instruction to place an EEOC determination in the proper context." *Renta*, 2009 WL 4421245, at *1 (citation omitted). "This instruction should explain what an EEOC determination is, emphasizing that it is not an adjudication of rights and liabilities." *Id*. (citation omitted).

## C.    Negligence Standard

Under Georgia law, an employer is required to exercise "that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances" to prevent sexual harassment of its employees. O.C.G.A. § 51-1-2.

The "issue in cases of this kind is knowledge or reason to know, not complaints. An employer may know, or in the exercise of due care have reason to know, of an employee's reputation for sexual harassment in the absence of complaints." *See Favors v. Alco Mfg. Co.*, 186 Ga. App. 480, 480-482 (1988).

A business owner or officer aware of his own tendency to harass employees must replace himself with an outside manager if he wishes to shield the business from liability for his actions. *Terrell v. OTS, Inc.*, 470 F. App'x 845, 845-46 (11th Cir. 2012); *see also*, *Terrell v. OTS Inc.*, No. 1:09-CV-626-RWS, 2011 U.S. Dist. LEXIS 71174, at *4 (N.D. Ga. July 1, 2011). Moreover, the knowledge of a high-

level officer of a corporation, who "has the power to act for the corporation in the scope of the company's ordinary business" may be considered the alter ego of the corporation, such that his knowledge of his own harassing tendencies is imputed to the corporation. *Lewis Trucking and Grading, Inc. v. Berry*, Civil Action No. 05A-33732-3, Order on Summary Judgment, pp. 15-16 (DeKalb County State Court Feb. 1, 2008).[4]

Additionally, the "exercise of reasonable care" includes, *inter alia*, having an express policy discouraging harassment, providing a mechanism by which employees can complain, and promptly responding to such complaints. *Harvey*, 198 Ga. App. at 108; *Coleman v. Housing Auth.*, 191 Ga. App. 166, 170-171 (1989). "In assessing an employer's responsibility and potential liability, federal courts have considered factors such as whether the employer had an express policy discouraging unlawful discrimination, provided a mechanism by which employees could

---

[4] The *Lewis Trucking* decision cites to federal law for persuasive authority. Although the requirements of federal law (*i.e.* Title VII) are not binding in interpreting and applying Georgia common law with respect to Plaintiff's negligence claims, Plaintiff cites to instructive federal cases addressing similar issues. *Spivey v. Akstein*, No. 1:04-CV-1003-WSD-CCH, 2005 U.S. Dist. LEXIS 38845, at *63-66 (N.D. Ga. Dec. 2, 2005) (self-knowledge of president and CEO with supervisory authority over employees attributed to the company); *Pospicil v. Buying Office, Inc.*, 71 F. Supp. 2d 1346, 1358 (N.D. Ga. 1999) ("an employer can be held vicariously liable for a supervisor's sexual harassment . . . [when] the supervisor holds such high position in the company that he could be considered the employer's 'alter ego'").

complain, and promptly responded to the complaints. . . Similar principles should be applied in actions brought in this State." *Coleman*, <u>191 Ga. App. at 170-171</u>. *See also Harvey*, <u>198 Ga. App. at 108</u>.

The Fulton County Superior Court found the absence of such a policy, combined with the plaintiff's testimony that she would have followed complaint procedures had she known about them, to constitute "sufficient evidence for a jury to conclude that, if [employer] had exercised reasonable care, it would have learned of [harasser's] harassment of [plaintiff]."[5] *Lee v. Doll House II, Inc.*, Civil Action No. 2016CV280751, Order Denying Summary Judgment at 9-12 (Fulton County Superior Court Jan. 2, 2018); *see also Newsome v. Cooper-Wiss*, <u>179 Ga. App. 670, 673</u> (1986) (finding employer had reason to be aware of the harassment because, *inter alia*, the harasser "had a reputation among the female employees for sexual harassment").

---

[5] In this case, the Defendants claim to have a policy. But it was never provided to the Plaintiff.

### 1.    Negligent Failure to Prevent Sexual Harassment

Negligent failure to prevent sexual harassment is a tort under Georgia law that creates a duty for employers to take reasonable steps to prevent workplace sexual harassment. Georgia common law establishes a duty for employers to take reasonable steps to prevent workplace sexual harassment. *See Favors*, 186 Ga. App. at 480-482. Failure to take such steps constitutes the tort of negligent failure to prevent sexual harassment whenever it results in sexual harassment. *See id.*

"'Pursuant to. . .Georgia law, plaintiffs may allege common law negligence claims against employers based on another employee's sexual harassment.'" *Smith v. Outdoor Network Distribution, LLC*, 626 F. Supp. 3d 1320, 1349 (M.D. Ga. 2022) (distinguishing between negligence claims based on sexual harassment and discrimination). In Division 1(a) of the *Harvey* decision, the Court held that the plaintiff raised a genuine issue as to her negligent retention claim based on evidence that the employer should have known of the harasser's reputation for sexual harassment because (1) the harasser's pattern of sexually harassing women was widely known among employees, and (2) the employer had no procedure for employees to complain of sexual harassment. *Harvey v. McLaughlin*, 198 Ga. App. 105, 107-108 (1990). After addressing other issues, the Georgia Court of Appeals, in Division 2 of the opinion, then held, "[f]or the reasons stated in Division 1(a),

questions of fact <u>also</u> remain as to whether [the employer] negligently failed to keep its work place free from sexual harassment." *Id.* at 109 (emphasis added).

Other decisions of the Georgia Court of Appeals have also held an employer has this duty. *Travis Pruitt & Assocs., P.C. v. Hooper*, <u>277 Ga. App. 1, 5</u> (2005) ("Where . . . for purely personal reasons an employee sexually harasses a co-employee, the employer may be held liable for <u>its own independent acts or omissions</u> by which it negligently or intentionally allowed the harassment to occur.") (emphasis added); *Favors*, <u>186 Ga. App. at 480</u> ("Count 4 of the complaint . . . asserted that Alco negligently failed to provide a work place which was free from sexual harassment."); *Id.* at 482 ("Count 4 of the complaint sets forth a common law tort claim against Alco."); *see also Mathews v. Anderson*, <u>826 F. Supp. 479, 481</u> (M.D. Ga. 1993) ("the causes of action Defendant finds objectionable, i.e., Counts V-VII, are recognized under Georgia law. Count VI, Failure to Maintain a Safe Work Environment Preventing Sexual Harassment is a negligence claim.") (citing, *inter alia*, *Favors* and *Harvey*).

## 2.   Negligent and Wrongful Hiring, Retention, and Supervision

Georgia courts have found on multiple occasions that employers should have known about their employee's propensity for harassment when the harassment was openly performed in front of others and was widely known among the employer's workforce. *Harvey*, <u>198 Ga. App. at 108</u> ("McLaughlin's conduct was known

generally by the other employees of the office and . . . the incident involving plaintiff was not an isolated event in that McLaughlin had been involved in similar circumstances involving sexual harassment."); *Favors v. Alco Mfg. Co.*, 186 Ga. App. 480, 483 (1988) ("we find that Alco's female employees were sexually harassed by Lindley; that the sexual harassment took place at Alco frequently and openly; and that Alco's employees (including supervisors) generally were aware of it."); *Newsome v. Cooper-Wiss*, 179 Ga. App. 670, 673 (1986) (finding employer had reason to be aware of the harassment because, *inter alia*, the harasser "had a reputation among the female employees for sexual harassment").

### D.    Conversion of Property

To make out a prima facie case of conversion, Plaintiff must prove her title to the property, possession by Defendants, demand by Plaintiff for return of the property, and refusal without justification by Defendants to return such property. *Dalton Diversified, Inc. v. AmSouth Bank*, 270 Ga. App. 203, 208 (citing *Taylor v. Powertel*, 250 Ga. App. 356, 358 (2) (551 SE2d 765) (2001)). "In actions to recover the possession of chattels, it shall not be necessary to prove any conversion of the property if the defendant is in possession when the action is brought." O.C.G.A. § 44-12-150.

As recognized by the Court of Appeals, "[c]onversion consists of an unauthorized assumption and exercise of the right of ownership over personal

property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Md. Casualty Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1987) (quotations omitted). "Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it. It is in law a conversion whether it be for his own or any other's use . . ." *Id.* (citations omitted). "Conversion involves the unauthorized assumption and exercise of right of ownership over personalty of another, contrary to the owner's rights[.]" *Id.* (citations omitted).

"In an action to recover personal property, the plaintiff may elect: (1) To accept an alternative verdict for the property or for its value; (2) To demand a verdict for the damages alone; or (3) To demand a verdict for the property alone and its hire, if any. It shall be the duty of the court to instruct the jury to render the verdict as the plaintiff elects." O.C.G.A. § 44-12-151. "For personalty unlawfully detained, the plaintiff may recover a sum in the amount of the highest value which [s]he is able to prove existed between the time of the conversion and the trial." O.C.G.A. § 44-12-152.

### E.    Trespass to Chattel

"Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered." O.C.G.A. § 51-10-3. "The action of trespass to personalty is concurrent with the action of trover and conversion, although the two actions are not entirely coextensive." *Welchel*, 257 Ga. at 261. (quotations and citations omitted). When property taken was personalty and alleged to have been taken without the owner's consent, such action is tortious and a trespass for which damages may be recovered. *Lowery v. McTier,* 99 Ga. App. 423, 108 S.E.2d 771 (1959).

### F.    Intentional Infliction of Emotional Distress

Under Georgia law, a defendant commits the tort of Intentional Infliction of Emotional Distress ("IIED") when the following elements are proven: (1) intentional or reckless conduct (2) which is extreme and outrageous and (3) caused the victim to suffer emotional distress (4) which is severe. *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 499 (Ga. Ct. App. 1996). "[T]he conduct . . . must be of such serious import as to *naturally* give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." *Gordon v. Frost*, 193 Ga. App. 517, 521 (1989).

Termination with retaliatory intent is extreme and outrageous conduct for the purpose of an IIED claim. In *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703 (1991),

44

the employee testified against her employer in an employment discrimination lawsuit, even after her employer's attorney told her that "he hoped that this would not affect [her] job." *Id.* at 703-04. In response, the employer transferred her to what she considered "a demotion to a meaningless position where she was underused, undervalued, and abused by her supervisor." *Id.* at 704. The Georgia Supreme Court held that:

> The fact that [the employer] deliberately set out to retaliate against her, and to punish her for ignoring its lawyer's admonitions and testifying against the employer, which retaliation included subjecting her to abuse by her supervisor and causing her severe emotional pain, if proved, would meet the threshold which reasonable persons would consider outrageous and extreme conduct and would be sufficient to subject the company to damages.

*Id.* at 706. The Georgia Court of Appeals has interpreted *Yarbray* to hold that a retaliatory demotion <u>itself</u> was extreme and outrageous conduct by the employer. *See Trimble*, 220 Ga. App. at 500 (summarizing *Yarbray* as follows: "After the employee testified 'against' the company, she was transferred to a position considered to be a demotion. This alleged retaliation met the threshold which reasonable persons would consider outrageous.").

The court has recognized that 'the existence of a special relationship in which one person has control over another, as in the employer-employee relationship, may produce a character of outrageousness that otherwise might not exist.'" *Coleman*, 191 Ga. App. at 169:

45

The workplace is not a free zone in which the duty not to engage in wilfully and wantonly causing emotional distress through the use of abusive or obscene language does not exist. Actually, by its very nature, it provides an environment more prone to such occurrences because it provides a captive victim who may fear reprisal for complaining, so that the injury is exacerbated by repetition, and it presents a hierarchy of structured relationships which cannot easily be avoided. The opportunity for commission of the tort is more frequently presented in the workplace than in casual circumstances involving temporary relationships.

*Id.*

### G.    Punitive Damages

Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant. O.C.G.A. § 51-12-5.1; *Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 28 (2006); *Tyler v. Lincoln*, 272 Ga. 118, 122 (2000).

### H.     Attorneys' Fees and Expenses of Litigation[6]

While the expenses of litigation generally shall not be allowed as a part of the damages for state law claims, where the plaintiff has specially pleaded and has made prayer therefore and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them. O.C.G.A. § 13-6-11; *Tyler*, 272 Ga. at 122.

### I.     Plaintiff's Objection to Defendants Calling Undisclosed Witnesses

Permitting Defendants to call previously-unidentified witnesses would unfairly prejudice Plaintiff and would violate the Federal Rules of Civil Procedure and this Court's Order. Plaintiff specifically requested the identification of witnesses in her discovery requests. As the Court detailed in its Standing Order, "The Court does not allow evidence at trial which was requested and not revealed during the discovery period." Federal Rule of Civil Procedure 26(e) states:

(e) Supplementing Disclosures and Responses.

(1) *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the

---

[6] Attorneys' fees and costs are mandatory in FLSA actions. *See* 29 U.S.C. § 216(b). Attorneys' fees and costs are also available in Title VII actions by statute. *See* 42 U.S.C. § 2000e-5(k)).

additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

      (B) as ordered by the court.

*Id.*

Among other requests, in Interrogatory No. 2, Plaintiff requested identification of all witnesses and Defendant responded the following:

> Identify all persons whom you know or believe to have knowledge concerning any of the claims or defenses asserted in this action and describe in full detail the knowledge each such individual is known or believed to possess.

> **RESPONSE: The Respondent is without any knowledge of the state law claims laid out in the complaint, save for the allegations made by the plaintiff. As for the FLSA claims, Respondent identified Charles Reedy and Michelle Hudley.**

Federal Rule of Civil Procedure 37(c)(1) provides, in part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006).

Defendants should not be permitted to call nondisclosed witnesses. Because Defendants failed to timely identify these witnesses, Plaintiff was deprived of the

opportunity of deposing them during discovery and is accordingly prejudiced. *See Nance v. Ricoh Electronics, Inc.*, 381 F. App'x 919, 923 (11th Cir. 2010) (district court did not abuse discretion when prohibiting testimony from undisclosed witnesses and holding that moving party would be prejudiced by calling undisclosed witnesses because it did not have the ability to depose them and conduct thorough discovery); *Roberts v. Scott Fetzer Co.*, 2010 WL 3546499 (M.D. Ga. Sept. 7, 2010) (Land, J.) (excluding undisclosed evidence in the context of a motion for class certification when the defendant failed to abide by Rule 26 and the Court's Order); *Small v. Cemex Se., LLC*, 2015 WL 3868148, *1 (M.D. Ga. June 23, 2015) (excluding witnesses not previously disclosed); *Robbins v. Robertson*, 2022 WL 2987890, *2-3 (M.D. Ga. July 28, 2022) (granting motion to compel to exclude undisclosed witness); *ROW Equipment, Inc. v. Terex USA, LLC*, 2019 WL 6215906, *2 (S.D. Ga. Nov. 21, 2019) (granting motion in limine to exclude witnesses not identified in initial disclosures or discovery responses).

## IV.  DAMAGES

### A.  FLSA Damages

Plaintiff seeks the following damages as to her FLSA claim:[7]

1. **Unpaid overtime wages:** Plaintiff seeks, and Defendants have agreed to pay, her unpaid overtime wages in the amount of approximately $11,141.69. The overtime rate of pay is based on the blended (or weighted) rate of pay. The total straight-time compensation for each workweek is divided by the total hours worked each workweek to determine the blended rate of pay at which overtime should be compensated. This number is then multiplied by 0.5 and then by the total overtime hours worked during the week. Defendants have stipulated to this amount.

2. **Liquidated damages:** In the total amount of $11,141.69, pursuant to 29 U.S.C. § 216(b). Defendants have also stipulated to this amount.

3. **Attorneys' fees and costs:** Plaintiff seeks her reasonable attorneys' fees and costs incurred through trial and post-trial briefing. *See* 29

---

[7] These calculations are based on estimates, which are necessary due to Defendants' failure to maintain records as required by the FLSA. *See* 29 C.F.R. §§ 516.1, 516.2, 516.28.

U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Plaintiff's attorneys' fees and costs continue to accrue.

4. **Post-judgment interest:** Plaintiff seeks post-judgment interest at the applicable rate.

## B.    Title VII Damages

Plaintiff seeks the following damages as to her Title VII claims:

1. **Full back pay**: Plaintiff seeks back pay from the date of her termination to the date of final judgment, calculated as the difference between her pay at the time of her termination, less the wages she received during the period applicable to the particular claim, on which she is successful at trial. Plaintiff currently calculates those damages as follows: $8,050.89. *See* 42 U.S. Code § 1981a.

2. **Compensatory damages**: Plaintiff seeks an amount to be determined by the enlightened conscience of the jury to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. *See* 42 U.S. Code § 1981a.

51

3. **Punitive damages**: Punitive damages may be awarded to punish an employer who has committed an especially malicious or reckless act of discrimination or retaliation. Plaintiff seeks punitive damages against Defendants in an amount to be determined by the enlightened conscience of the jury to punish, penalize, or deter Defendants in the future. *See* 42 U.S. Code § 1981a.

4. **Post-judgment interest**: Plaintiff seeks post-judgment interest at the applicable rate. *See* 42 U.S. Code § 1981a.

5. **Attorneys' fees and costs**: Plaintiff seeks her reasonable attorneys' fees and costs incurred through trial and post-trial. Plaintiff's attorneys' fees and costs continue to accrue. *See* 42 U.S. Code § 1981a and 42 U.S.C. § 2000e-5(k).

C.  **State Law Damages for Negligent Failure to Prevent Sexual Harassment, Negligent Hiring, Retention, and Supervision, and IIED**

1. **Compensatory damages**: In an amount to be determined by the enlightened conscience of the jury to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. *See* O.C.G.A. § 51-12-4.

    **2.** **Punitive damages**: See Section E below.

    **3.** **Attorneys' Fees and Expenses**: See Section F below.

**D.** **State Law Damages for Conversion and Trespass to Chattel**

"In an action to recover personal property, the plaintiff may elect: (1) To accept an alternative verdict for the property or for its value; (2) To demand a verdict for the damages alone; or (3) To demand a verdict for the property alone and its hire, if any. It shall be the duty of the court to instruct the jury to render the verdict as the plaintiff elects." O.C.G.A. § 44-12-151. "For personalty unlawfully detained, the plaintiff may recover a sum in the amount of the highest value which [s]he is able to prove existed between the time of the conversion and the trial." O.C.G.A. § 44-12-152. "Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered." O.C.G.A. § 51-10-3.

    **1.** **Punitive damages**: See Section E below.

    **2.** **Attorneys' Fees and Expenses**: See Section F below.

**E.** **Punitive Damages**

As a result of Defendants' willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, Plaintiff seeks punitive damages against Defendants in an amount to be determined by the enlightened conscience of the jury

to punish, penalize, or deter Defendants in the future. *See* O.C.G.A. § 51-12-5.1;

*Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 28 (2006); *Tyler*, 272

Ga. at 122. In a tort case in which the cause of action does not arise from product

liability, if it is found that the defendant acted, or failed to act, with the specific intent

to cause harm, there shall be no limitation regarding the amount which may be

awarded as punitive damages. O.C.G.A. § 51-12-5.1.

### F.    Attorneys' Fees and Expenses

Because Plaintiff has specially pleaded and has made prayer for attorneys'

fees and expenses and Defendants have acted in bad faith, have been stubbornly

litigious, or have caused the plaintiff unnecessary trouble and expense, Plaintiff

seeks her reasonable attorneys' fees and expenses. O.C.G.A. § 13-6-11; *Tyler*, 272

Ga. at 122.

## V.    SUCCESSOR-IN-INTEREST

### A.    FLSA

The Eleventh Circuit has applied successor liability in the FLSA context. *See*

*Hatfield v. A+ Nursetemps*, 651 F. App'x 901 (11th Cir. 2016). In that case, the

Court of Appeals cited with approval (and relied heavily on) *Teed v. Thomas & Betts*

*Power Solutions*, 711 F.3d 763 (7th Cir. 2013) (Posner, J.), where the Seventh

Circuit said:

> When a company is sold in an asset sale as opposed to a stock sale, the buyer acquires the company's assets but not necessarily its liabilities; whether or not it acquires them is the issue of successor liability. Most states limit such liability, with exceptions irrelevant to this case, to sales in which a buyer (the successor) expressly or implicitly assumes the seller's liabilities. . . . But when liability is based on a violation of a federal statute relating to labor relations or employment [like the FLSA], a federal common law standard of successor liability is applied that is more favorable to plaintiffs than most state-law standards to which the court might otherwise look.

*Id.* at 764 (emphasis added). The standard applied in *Teed* (which the Eleventh Circuit has endorsed) considers whether:

> (1) "the successor had notice of the pending" action;
> (2) "the predecessor . . . would have been able to provide the relief sought in the [action] before the sale";
> (3) "the predecessor could have provided the relief after the sale" (its "inability to provide relief favors successor liability");
> (4) "the successor can provide the relief sought in the [action]"; and
> (5) "there is continuity between the operations and work force of the predecessor and the successor."

*Hatfield*, 651 F. App'x at 907 (quoting *Teed*). These considerations do not represent a rigid or mechanical test but, rather, should be applied flexibly with an understanding that "successor liability is appropriate in suits to enforce federal labor or employment laws . . . unless there are good reasons to withhold such liability." *See Teed*, 711 F.3d at 766 (emphasis added). Thus, it appears that successor liability may be presumed in labor and employment cases insofar as there must be "good reasons" to withhold it. Indeed, *Teed* expressly allowed that successor liability may

sometimes apply in labor or employment cases "even when the successor disclaimed liability when it acquired the assets in question." *Id.* (emphasis added).

## B.     Title VII

In the context of the employee/employer relationship, courts have recognized that congressional policies against unfair and discriminatory labor practices embodied in statutes such as the National Labor Relations Act ("NLRA"), Title VII, and Section 1981 override common law rules of successor liability. *See, e.g., Golden State Bottling Co. v. National Labor Relations Board*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973) (NLRA); *In re National Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir.1983) (Title VII); *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 745–46 (7th Cir.1985) ( Section 1981); *Desporte-Bryan v. Bank of America*, 147 F.Supp. 2d 1356, 1362 (S.D. Fla. 2001). The imposition of successor liability "does not create new rights in the employee but merely recognizes that the employee-victim of unfair labor practices is essentially helpless to protect existing rights when ownership of a business changes." *Preyer v. Gulf Tank & Fabricating Co., Inc.*, 826 F. Supp. 1389, 1395 (N.D. Fla. 1993).

In applying the doctrine, courts are to "balance the interests" of the employee, the employer, and public policy in enforcement of antidiscrimination statutes. *Desport-Bryan* at 1362.; *see also, In re National Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983) (same). There are several factors in which to balance the interests,

including: (1) whether the successor had notice of the claim; (2) whether the predecessor may provide relief requested; and (3) whether there is continuity of the business to a level that would justify successor liability. *See Desporte-Bryan* at 1362; *see also, Teed v. Thomas & Betts Power Solutions*, LLC, 711 F.3d 763, 765-66 (7th Cir. 2013) (noting these same factors plus whether the successor can provide relief). But, what is "of greater importance" is that "the test for successor liability is fact specific and must be conducted 'in light of the facts of each case and the particular legal obligation which is at issue.'" *In re National Airlines, Inc.* at 698, quoting *Howard Johnson Co., Inc. v. Detroit Local Joint Executive Bd.*, 417 U.S. 249, 262, n.9 (1974).

### C.    State Law

Successor liability is not a tort. It is an equitable tool used to transfer liability from a predecessor to a successor. *Tindall v. H&S Homes*, LLC, 2011 U.S. Dist. LEXIS 104611, *7-8 (M.D.Ga. September 15, 2011) (citing *Coffman v. Chugach Support Svcs, Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005) (noting that "equitable principles underlie the doctrine of successor liability"). In other words, the theory of successor liability merely provides a plaintiff an alternative entity from whom to recover; it does not create a new cause of action against the successor which is independent of the underlying tort. *Tindall*, 2011 U.S. Dist. LEXIS 104611 at *7-8. Georgia, like most jurisdictions allows for successor liability where "(1) there is an

agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the

transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere

continuation of the predecessor corporation." *Id.* (citing *Bullington v. Union Tool*

*Corp.*, 254 Ga. 283, 284, 328 S.E.2d 726 (1985)); *see also, Bud Antle, Inc. v. Eastern*

*Foods, Inc.*, 758 F.2d 1451, 1456-57 (11th Cir. 1985).

**ATTACHMENT D**
**Defendants' Outline of the Case**

**I.**

**Opposition to Plaintiff's Claim**

The Defendants acknowledge the claims asserted by the Plaintiff as listed in this section. The Defendants generally deny the factual and legal conclusions drawn by the Plaintiff regarding these claims, except where explicitly admitted by stipulation or prior filings. Specifically, with respect to the enumerated counts:

- Count I (FLSA Overtime): The Defendants acknowledge their stipulation [doc. 60] regarding their status as employers under the FLSA, employment of Plaintiff, and GSM as a successor in interest to C&M. The Defendants further acknowledge their stipulation regarding liability for unpaid overtime.

- Counts II-V (Title VII Claims): The Defendants admit liability for hostile work environment, *quid pro quo* harassment, discrimination based on sexual orientation, and retaliation under Title VII. The Defendants acknowledge the Plaintiff's timely filing of a Charge of Discrimination with the EEOC and the issuance of a "Cause" finding and Notice of Right to Sue.

- Counts VI-VII (Georgia State Law Negligence Claims): The Defendants admit liability for negligent failure to prevent sexual harassment and negligent and wrongful hiring and supervision under Georgia state law.

- Count XI (Conversion of Property): The Defendants admit liability for conversion of property.

- Count XII (Trespass to Chattel): The Defendants admit liability for trespass to chattel.

- Count XIII (Intentional Infliction of Emotional Distress): The Defendants admit liability for intentional infliction of emotional distress.

- Count XIV (Punitive Damages): The Defendants admit that punitive damages are warranted in this case.

- Count XV (Attorneys' Fees and Expenses of Litigation): The Defendants admit that Plaintiff is entitled to attorneys' fees and expenses of litigation.

The Defendants acknowledge Plaintiff's assertion that Defendant GSM is a successor in interest to Defendant C&M.

## II.

### Defendants' Brief Recital of the Facts

Defendants have stipulated to liability in the is case and is therefore moving forward for a defense to damages only. To this extent Defendants reserves the right to withhold its strategy for defense until trial.

## III.

### Defendants' Applicable Legal Standards And Relevant Law

Defendants present the following legal standards and relevant law in response to Plaintiff's asserted claims.

### A. FLSA Failure to Pay Overtime

### 1. Coverage

Defendants acknowledge and reiterate their stipulation [Doc. 60] that C&M and Reedy were employers under the FLSA, employed Plaintiff within the meaning of the FLSA, and that GSM is a successor in interest to C&M. While Plaintiff correctly states the general requirements for FLSA coverage, including both "individual coverage" and "enterprise coverage" as outlined in 29 U.S.C. §§ 206(a) and 207(a)(1), the Defendants' stipulation on employer status and employment of Plaintiff under the FLSA obviates the need for further extensive discussion regarding

the specific tests for coverage. The critical point for trial will be the accurate calculation of overtime wages, given the admitted liability.

## 2. Overtime

Defendants further acknowledge their admission [Doc. 60] that there were workweeks in which Plaintiff worked in excess of 40 hours and did not receive overtime, and that Defendants C&M, GSM, and Reedy are liable under the FLSA for the unpaid overtime. The legal standards articulated by Plaintiff regarding the calculation of the "regular rate" of pay, derived from "all remuneration for employment" (29 U.S.C. § 207(e)) and the weighted average method for employees with different rates of pay (29 C.F.R. § 778.115), are accepted by Defendants as the applicable framework for determining the amount of unpaid overtime. The dispute at trial will center on the precise hours worked and the correct application of these principles to determine the exact amount of damages.

## 3. Individual Defendant Liability

Defendants also affirm their admission [Doc. 60] that Reedy was an employer under the FLSA and has individual liability. Plaintiff's cited authority, including *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013), and the "economic reality" test (Villarreal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997)), correctly outline the legal basis for individual liability. The factors considered under the

economic reality test—power to hire and fire, supervision of work schedules, determination of payment rates, and maintenance of employment records—are well-established. Given the admission of individual liability, the focus at trial will be on the scope of that liability in relation to the specific damages proven by Plaintiff.

## 4. Willfulness and Lack of Good Faith

Defendants unequivocally admit [Doc. 60] that they willfully violated the FLSA and did not make a good faith attempt to comply with the FLSA. This admission extends the FLSA limitations period to three years as per 29 U.S.C. § 255(a) and *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1280 (11th Cir. 2008). Furthermore, Defendants' admission precludes a defense against liquidated damages, as Plaintiff correctly notes that liquidated damages are mandatory absent a showing of good faith by the employer (29 U.S.C. § 216(b); *Reyes v. Aqua Life Corp.*, 632 F. App'x 552, 555 (11th Cir. 2015)). The willfulness and lack of good faith are established facts for the purposes of this litigation.

## B. Title VII of the Civil Rights Act of 1964

## 1. Hostile Work Environment

Defendants acknowledge that Title VII prohibits discrimination based on sex, including hostile work environments. While Plaintiff correctly outlines the five

elements for proving a hostile work environment claim (Reeves v. C.H. Robinson Worldwide, Inc., <u>594 F.3d 798, 807</u> (11th Cir. 2010)), Defendants contend that the evidence presented will demonstrate that the alleged conduct, viewed cumulatively and in the totality of the circumstances, does not meet the "severe or pervasive" threshold required to alter the terms and conditions of employment and create a discriminatorily abusive working environment. Defendants will present evidence to show that any alleged conduct was not sufficiently frequent, severe, physically threatening or humiliating, or did not unreasonably interfere with Plaintiff's work performance, as required by *Reeves*.

## 2. Quid Pro Quo Harassment

Defendants acknowledge the legal standard for quid pro quo sexual harassment as outlined in *Sparks v. Pilot Freight Carriers, Inc.*, <u>830 F.2d 1554, 1564</u> (11th Cir. 1987), and *Farley v. Am. Cast Iron Pipe Co.*, <u>115 F.3d 1548, 1552-23</u> (11th Cir. 1997). Defendants deny that any supervisor made a sexual advance toward Plaintiff in exchange for an express or implied job benefit, or that Plaintiff suffered a tangible employment action as a result of declining any such alleged advance. Defendants maintain that the evidence will show no such quid pro quo exchange or resulting adverse employment action.

### 3. Discrimination Based on Sexual Orientation

Defendants recognize that *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020),
establishes that firing an individual for being gay or transgender violates Title VII.
While the traditional prima facie case elements (membership in protected class,
adverse employment action, qualification for position, and more favorable
treatment of similarly situated individual) are noted, Defendants anticipate Plaintiff
may rely on the "convincing mosaic" approach if a direct comparator is lacking, as
discussed in *Lugardo v. Pub. Health Tr. of Miami-Dade Cnty.*, 2025 WL 603556
(S.D. Fla. Feb. 25, 2025). Defendants deny that any employment action taken
against Plaintiff was based on sexual orientation. Defendants will present
legitimate, non-discriminatory reasons for any employment actions, and will argue
that Plaintiff cannot establish pretext under either the traditional framework or the
"convincing mosaic" approach.

### 4. Retaliation

Defendants acknowledge that Title VII prohibits retaliation for engaging in protected
activity (42 U.S.C. § 2000e-3). Plaintiff's elements for a retaliation claim (protected
activity, adverse action, causation, and damages) are the proper framework for
analysis. Defendants contend that Plaintiff cannot establish the requisite "but for"
causation, as articulated in *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338,

352 (2013). Defendants will present evidence demonstrating that any alleged adverse actions were not taken because Plaintiff engaged in protected activity.

## 5. For Cause Finding

Defendants acknowledge the general admissibility of an EEOC determination, provided it is placed in the "proper context" as noted in *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1288 (11th Cir.2008). Defendants reserve the right to challenge the probative value of any EEOC "for cause" finding and will seek appropriate limiting instructions to ensure the jury understands that such a finding is not an adjudication of rights and liabilities, but merely a preliminary administrative determination.

## C. Negligent Failure to Prevent Sexual Harassment

Defendants acknowledge that Georgia common law recognizes a tort of negligent failure to prevent sexual harassment, creating a duty for employers to take reasonable steps to prevent workplace sexual harassment, as established in cases like *Favors v. Alco Mfg. Co.*, 186 Ga. App. 480 (1988), and *Smith v. Outdoor Network Distribution, LLC*, 626 F. Supp. 3d 1320, 1349 (M.D. Ga. 2022). However, Defendants deny that they breached this duty. Defendants will present evidence of their policies, procedures, and actions taken to prevent and address sexual harassment in the workplace. Defendants will argue that they exercised reasonable

66

care and took appropriate steps, and therefore, cannot be held liable for negligent failure to prevent sexual harassment.

## D. Negligent and Wrongful Hiring, Retention, and Supervision

Defendants acknowledge the legal precedent in Georgia regarding negligent hiring, retention, and supervision, particularly where an employer knows or should have known of an employee's propensity for harassment, as illustrated by *Harvey v. McLaughlin*, 198 Ga. App. 105 (1990), and *Favors v. Alco Mfg. Co.*, 186 Ga. App. 480 (1988). Defendants deny that they negligently or wrongfully hired, retained, or supervised any employee who engaged in harassment. Defendants will present evidence demonstrating that they conducted appropriate due diligence in hiring and that they promptly addressed any complaints or concerns regarding employee conduct as they arose. Defendants will argue that they did not have prior knowledge or reason to know of any alleged harasser's propensity for harassment that would warrant a finding of negligent hiring, retention, or supervision.

## E. Conversion of Property

Defendants acknowledge the elements of conversion under Georgia law: Plaintiff's title to the property, possession by Defendants, demand by Plaintiff for return, and unjustified refusal by Defendants (*Dalton Diversified, Inc. v. AmSouth Bank*, 270 Ga. App. 203, 208 (2004)). Defendants also understand that conversion involves an

unauthorized assumption and exercise of ownership over another's personal property (*Md. Casualty Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1987)). Defendants deny that they converted any property belonging to Plaintiff. Defendants will present evidence demonstrating that they did not unlawfully assume dominion over Plaintiff's property, or that any possession was justified, or that no proper demand for return was made or refused without justification.

## F. Trespass to Chattel

Defendants acknowledge the legal standard for trespass to chattel, which involves any unlawful abuse of or damage done to the personal property of another (O.C.G.A. § 51-10-3). While recognizing its concurrency with conversion, Defendants deny that they committed any unlawful abuse of or damage to Plaintiff's personal property. Defendants will present evidence to refute any claim that their actions constituted a tortious taking or unlawful interference with Plaintiff's personality.

## G. Intentional Infliction of Emotional Distress

Defendants acknowledge the four elements for Intentional Infliction of Emotional Distress (IIED) under Georgia law: intentional or reckless conduct, which is extreme and outrageous, causing severe emotional distress (*Trimble v. Circuit City Stores*, 220 Ga. App. 498, 499 (1996)). Defendants specifically contest whether their alleged conduct rises to the level of "extreme and outrageous" as defined by Georgia law,

which requires conduct "of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress" (*Gordon v. Frost*, 193 Ga. App. 517, 521 (1989)). Defendants will argue that the facts of this case do not meet this high threshold.

Regarding the Plaintiff's reliance on *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703 (1991), and *Trimble*, Defendants assert that the alleged circumstances of Plaintiff's employment and separation do not parallel the specific facts of *Yarbray*, which involved deliberate retaliation for testifying against an employer in a prior discrimination lawsuit and a subsequent abusive demotion. Defendants will contend that their actions were not retaliatory in nature and did not involve conduct that reasonable persons would consider outrageous and extreme, sufficient to cause severe emotional distress.

## H. Punitive Damages

Defendants acknowledge that punitive damages may be awarded in tort actions only upon clear and convincing evidence of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences" (O.C.G.A. § 51-12-5.1). Defendants deny that their actions demonstrate the level of egregious conduct necessary to justify an award of punitive damages under this standard. While

69

Defendants admit to willful violations of the FLSA regarding overtime pay, this admission does not automatically extend to a finding of "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care" for the purpose of state law tort claims. Defendants will present evidence that their conduct, while acknowledging the FLSA violations, does not rise to the level warranting punitive damages for the alleged state law torts.

## I. Attorneys' Fees and Expenses of Litigation

Defendants acknowledge that attorneys' fees and expenses of litigation may be awarded for state law claims where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense (O.C.G.A. § 13-6-11). Defendants deny that their conduct in this litigation, or in the underlying events giving rise to this litigation, meets the criteria for an award of attorneys' fees and expenses under O.C.G.A. § 13-6-11. Defendants maintain that they have litigated this matter in good faith and have not caused Plaintiff unnecessary trouble or expense.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S DAMAGES SECTION

Defendants respond to Plaintiff's proposed damages as follows:

## A. FLSA Damages

## 1. Unpaid Overtime Wages:

Defendants acknowledge their admitted liability for unpaid overtime wages under the FLSA. However, Defendants dispute the precise calculation of "approximately $11,141.69." While Defendants agree with the general methodology of calculating the blended (or weighted) rate of pay by dividing total straight-time compensation by total hours worked and multiplying by 0.5 for overtime hours, Defendants contend that Plaintiff's underlying hourly records and calculation of hours worked in excess of 40 per week are inaccurate. Defendants assert that the actual amount of unpaid overtime wages, based on accurate work records and proper application of the weighted average method, is significantly less than the amount claimed by Plaintiff. Defendants will present evidence regarding the correct hours worked and the corresponding proper calculation of unpaid overtime.

## 2. Liquidated Damages:

Defendants acknowledge their admission of willful violation of the FLSA and lack of good faith, which, as a matter of law, makes liquidated damages mandatory under

29 U.S.C. § 216(b). Therefore, Defendants do not oppose an award of liquidated damages equal to the amount of actual unpaid overtime wages, provided that the precise amount of unpaid overtime wages is accurately determined at trial.

### 3. Attorneys' Fees and Costs:

Defendants acknowledge that 29 U.S.C. § 216(b) mandates an award of reasonable attorneys' fees and costs to a prevailing plaintiff in an FLSA action. Defendants do not oppose the principle of awarding reasonable attorneys' fees and costs. However, Defendants reserve the right to challenge the reasonableness and necessity of the specific fees and costs sought by Plaintiff, and to request a Lodestar analysis of attorney hours and rates, as well as a careful scrutiny of all claimed costs.

### 4. Post-judgment Interest:

Defendants do not oppose an award of post-judgment interest at the applicable legal rate on any judgment awarded for the FLSA claim.

### B. Title VII Damages

### 1. Full Back Pay:

Defendants deny that Plaintiff is entitled to the claimed amount of back pay, currently calculated at $6,730.89. Defendants contend that Plaintiff was lawfully terminated for legitimate, non-discriminatory, and non-retaliatory reasons.

Defendants will present evidence to refute Plaintiff's claim that her termination was a result of discrimination or retaliation under Title VII. Should the jury find liability, Defendants will challenge Plaintiff's mitigation of damages, arguing that Plaintiff failed to adequately seek or maintain comparable employment following her termination, thus reducing the recoverable back pay amount.

## 2. Compensatory Damages:

Defendants deny that Plaintiff is entitled to compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. Defendants deny that their actions caused Plaintiff to suffer any such damages. Should the jury find liability, Defendants will argue that any emotional distress or other nonpecuniary losses suffered by Plaintiff were not caused by the alleged discriminatory or retaliatory conduct, or that the extent of such damages is not as severe as claimed. Defendants reserve the right to challenge the amount sought by Plaintiff and to present evidence to minimize any potential award.

## 3. Punitive Damages:

Defendants deny that Plaintiff is entitled to punitive damages under Title VII. Punitive damages under 42 U.S.C. § 1981a are reserved for cases where the employer has engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. Defendants

contend that their actions, even if a violation of Title VII were found (which Defendants deny), did not involve malice or reckless indifference. Defendants will present evidence to demonstrate their good faith efforts and intentions, and to argue that their conduct does not meet the high standard required for an award of punitive damages.

## 4. Post-judgment Interest:

Defendants do not oppose an award of post-judgment interest at the applicable legal rate on any judgment awarded for the Title VII claims.

## 5. Attorneys' Fees and Costs:

Defendants acknowledge that 42 U.S.C. § 1981a and 42 U.S.C. § 2000e-5(k) allow for an award of reasonable attorneys' fees and costs to a prevailing party in a Title VII action. Defendants do not oppose the principle of awarding reasonable attorneys' fees and costs if Plaintiff prevails on her Title VII claims. However, Defendants reserve the right to challenge the reasonableness and necessity of the specific fees and costs sought by Plaintiff, and to request a Lodestar analysis of attorney hours and rates, as well as a careful scrutiny of all claimed costs.

## C. State Law Damages for Negligent Failure to Prevent Sexual Harassment, Negligent Hiring, Retention, and Supervision, and IIED

### 1. Compensatory Damages:

Defendants deny that Plaintiff is entitled to compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses under these state law claims. Defendants deny that their actions constitute negligent failure to prevent sexual harassment, negligent hiring, retention, and supervision, or intentional infliction of emotional distress, and therefore, deny any liability for resulting damages. Should the jury find liability, Defendants will argue that any emotional distress or other nonpecuniary losses suffered by Plaintiff were not caused by the alleged conduct of Defendants, or that the extent of such damages is not as severe as claimed. Defendants reserve the right to challenge the amount sought by Plaintiff and to present evidence to minimize any potential award.

### 2. Punitive Damages:

Defendants refer to their general opposition to punitive damages as outlined in Section E below, and reiterate their denial that their conduct under these state law torts rises to the level of willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences, as required by O.C.G.A. § 51-12-5.1.

### 3. Attorneys' Fees and Expenses:

Defendants refer to their general opposition to attorneys' fees and expenses as outlined in Section F below, and reiterate their denial that their conduct warrants an award of such under O.C.G.A. § 13-6-11 for these state law tort claims.

### D. State Law Damages for Conversion and Trespass to Chattel

Defendants acknowledge the provisions of O.C.G.A. § 44-12-151 and § 44-12-152 regarding the election of remedies for recovery of personal property and the potential for recovering the highest value between conversion and trial. Defendants further acknowledge O.C.G.A. § 51-10-3 regarding damages for trespass to chattel. However, Defendants deny that they converted or trespassed upon any of Plaintiff's property. Therefore, Defendants deny any liability for damages under these claims, whether in the form of property value, hire, or other damages. Defendants will present evidence to refute Plaintiff's claims of conversion and trespass to chattel.

### 1. Punitive Damages:

Defendants refer to their general opposition to punitive damages as outlined in Section E below, and reiterate their denial that their conduct regarding the alleged conversion or trespass to chattel rises to the level of willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the

presumption of conscious indifference to consequences, as required by O.C.G.A. § 51-12-5.1.

## 2. Attorneys' Fees and Expenses:

Defendants refer to their general opposition to attorneys' fees and expenses as outlined in Section F below, and reiterate their denial that their conduct warrants an award of such under O.C.G.A. § 13-6-11 for these state law tort claims.

## E. Punitive Damages

Defendants deny that their actions, in the context of the state law tort claims, demonstrate "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences" sufficient to justify an award of punitive damages under O.C.G.A. § 51-12-5.1. While Defendants acknowledge their admission of willful FLSA violations, this admission does not automatically translate to the higher standard required for punitive damages in tort. Defendants specifically deny that any of their actions were taken with the specific intent to cause harm, which would remove the statutory cap on punitive damages. Defendants will present evidence to demonstrate that their conduct does not meet the demanding standard for punitive damages, and will argue that the purpose of punitive damages, to punish, penalize, or deter, is not met by the facts of this case.

## F. Attorneys' Fees and Expenses

Defendants deny that they have acted in bad faith, have been stubbornly litigious, or have caused Plaintiff unnecessary trouble and expense such that an award of attorneys' fees and expenses is warranted under O.C.G.A. § 13-6-11. Defendants maintain that they have a good faith defense to the state law tort claims, and that their actions throughout the litigation have been reasonable and necessary in defending against Plaintiff's claims. Defendants will present evidence to rebut any assertion of bad faith, stubborn litigiousness, or causing unnecessary trouble and expense.

**ATTACHMENT E**
**Stipulated Facts**

1.     Plaintiff was employed as a Security Officer for Defendant C&M Defense from approximately April 2021 to April 3, 2023.

2.     Defendant GSM is a successor in interest to Defendant C&M, and is liable for the violations of the FLSA as alleged in Count I of Plaintiff's Second Amended Complaint.

3.     Defendants C&M, GSM and Reedy stipulate that they are liable for Count I of Plaintiff's Second Amended Complaint because they willfully failed to pay Plaintiff overtime wages at one-and-one half her regular rate for all time worked in excess of 40 hours per week.

4.     At all relevant times, Defendants C&M and Reedy were employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

5.     At all relevant times, Plaintiff was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207.

6.     At all relevant times, Defendants C&M had gross annual revenues in excess of $500,000.00.

7.     At all relevant times, Defendants C&M and Reedy employed Plaintiff within the meaning of the FLSA.

8.      At all relevant times, Defendants C&M and Reedy misclassified Plaintiff as an independent contractor.

9.      At all relevant times, Defendant Reedy was an employer within the meaning of the FLSA.

10.      The FLSA requires employers, such as Defendants C&M and Reedy, to compensate non-exempt employees, such as Plaintiff, at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per week.

11.      There were workweeks in which Plaintiff worked more than 40 hours when she worked for Defendants.

12.      Defendants C&M and Reedy regularly, and as a routine policy and practice, failed to pay Plaintiff overtime wages at one-and-one half her regular rate for all time worked in excess of 40 hours per week.

13.      Defendants C&M and Reedy willfully violated the FLSA within the meaning of 29 U.S.C. § 255(a).

14.      Defendants C&M and Reedy did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff.

15.      Due to Defendants C&M and Reedy's FLSA violations, Plaintiff is entitled to recover from Defendants C&M, Reedy, and GSM her unpaid overtime wages for each workweek within the limitations period in which she worked in

excess of 40 hours at one-and-one half her regular rate, an equal amount of liquidated damages, and all other relief provided by the FLSA.

16.    Mr. Reginald Daniels was terminated from C&M Defense Group LLC.

17.    Mr. Daniels was employed as Vice President of Operations for Defendant C&M.

18.    Defendant GSM is liable for the actions of Defendant C&M through successor liability.

19.    Defendants C&M, Reedy, and GSM had notice of this lawsuit prior to the termination of C&M through the Secretary of State of Georgia.

20.    There is continuity between the operations and work force of Defendants C&M and GSM.

21.    The EEOC made a litigation recommendation on Plaintiff's Charge.

22.    On January 7, 2025, the EEOC issued NRTS regarding Plaintiff's Charges of Discrimination against Defendants C&M and GSM at the request of counsel.

23.    On March 31, 2023, around 1:30 a.m., Defendant Reedy came to the GXO Tesla worksite while Plaintiff was working, and informed Plaintiff that Mr. Daniels was no longer employed with Defendant C&M and that Defendant C&M had lost the contract where Plaintiff was working.

24.    Plaintiff complained to Defendant Reedy that she was sexually harassed and assaulted by Mr. Daniels on multiple occasions while working for Defendants.

25.    On April 2, 2023, Plaintiff called Defendant Reedy, and he said he was working on the schedule and would give Plaintiff a new site soon.

26.    On April 2, 2023, Hudley then reassigned Plaintiff to another site location at 585 DeKalb Industrial Way, Decatur, Georgia 30033.

27.    Ms. Bryant worked at the site location on April 2, 2023 and April 3, 2023.

28.    On April 3, 2023, Hudley gave Plaintiff another worksite for her shift on April 4, 2023.

29.    Following her shift on April 3, 2023, Defendant Reedy texted Plaintiff and said, "Hi Markita [sic], Michelle gave you a post to go to tomorrow. Do not report there. That post was already filled."

30.    On April 11, 2023, Hudley stated, "[W]e don't have anything open at this moment."

31.    On or about September 27, 2023, Defendant C&M filed a position statement with the EEOC responding to Plaintiff's EEOC Charge.

32.     Shortly thereafter, on October 18, 2023, Defendant Reedy filed for a Name Reservation for "Global Security Management Team" through the Secretary of State of Georgia.

33.     The name reservation became effective on October 23, 2023 and was effective for thirty days.

34.     On November 11, 2023, Defendant Reedy filed the Articles of Organization for Global Security Management Team LLC with its principal office address as 2555 Delk Rd, Ste A-10, Marietta, Georgia 30067 and listed himself as the registered agent and organizer. The Articles of Organization took effect on November 24, 2023.

35.     On December 26, 2023, Defendant Reedy filed Defendant GSM's Annual Registration for 2023 and 2024.

36.     On March 25, 2024, the EEOC informed Defendants C&M and GSM that it was recommending a "for cause" finding and that it would issue a Letter of Determination against the Defendants pending approval.

37.     Following the EEOC's notification to Defendants of the "for cause" finding against them, on April 16, 2024, Defendant Reedy filed to terminate Defendant C&M through the Secretary of State of Georgia. The termination took effect on April 17, 2024.

38.    On April 26, 2024, counsel for Defendants C&M and Reedy informed Plaintiff's counsel that Defendant C&M began winding down when it lost a "big contract" and "before anything was filed."

39.    On May 6, 2024, the EEOC issued a Letter of Determination with a "for cause" finding that there is reasonable cause to conclude that Defendants C&M and GSM subjected Plaintiff to a hostile work environment based on her sex (female) and sexual orientation and was discharged in retaliation for engaging in protected activity.

40.    Ms. Michelle Hudley did not see the affidavit filed in this case on May 30, 2024 until the time of her deposition.

41.    Ms. Hudley did not sign the notarized affidavit that purports to be her affidavit that was filed in this case on May 30, 2024.

42.    Defendants filed the notarized affidavit that Defendants represented as being signed by Ms. Hudley on May 30, 2024 even though the affidavit was never seen or signed by Ms. Hudley.

43.    In their attempt to defend this case, Defendants filed, and requested the Court to rely on, the affidavit from Ms. Hudley that she did not actually see or sign.

44.    Defendants had Tuni Acosta notarize the affidavit dated April 27, 2024, that was represented by Defendant as having been signed by Ms. Hudley.

45.    Someone forged Ms. Hudley's signature.

46.     Defendants also had Tuni Acosta notarize the affidavit dated April 27, 2024, and signed by Mr. Charles Reedy.

47.     Both affidavits were filed with the Court on May 30, 2024 by Defendants and represented sworn testimony by the signatory.

48.     Defendants have purposefully destroyed communications with Mr. Daniels.

49.     Defendant Reedy communicated with Mr. Daniels by text message during this litigation, including the day before Mr. Daniels's deposition.

50.     Defendant Reedy deleted all text messages between him and Mr. Daniels, including the communications exchanged the day before Mr. Daniels' deposition and the day after Defendant Reedy's deposition.

51.     Ms. Hudley communicated with Mr. Daniels by text message during this litigation, including the day before Mr. Daniels's deposition and her deposition.

52.     Ms. Hudley deleted all text messages between her and Mr. Daniels, including those exchanged the day before Mr. Daniels' deposition.

53.     The deletion of the text messages by Defendant Reedy and Ms. Hudley with Mr. Daniels the day before his deposition occurred during litigation and during a period when all individuals were under the duty to preserve evidence related to this case.

54.     Defendants made no backup, archive, or alternate record of the deleted text messages and took no steps to preserve the messages.

55.     The communications Defendants deleted are relevant to the claims or defenses in this matter.

**ATTACHMENT F-1**
**<u>Plaintiff's Witness List</u>**

Plaintiff shall call the following witness at trial:

    1.    Ms. Makita Bryant, Plaintiff
            c/o Plaintiff's counsel

Plaintiff may call the following witnesses at trial:

    2.    Mr. Charles Reedy
            c/o Defense Counsel

    3.    Ms. Michelle Hudley
            c/o Defense Counsel

    4.    Ms. Jailyn Stroud
             2959 Cottage Ln
            Atlanta, GA 30337-3904
            (404) 423-3892

    5.    Ms. Cynthia Williams
            3252 Browns Mill Rd.,
            Atlanta, GA 30354
            (404) 690-8657

    6.    Ms. Zuriel Carr
            884 Tall Deer Dr
            Fairburn, GA 30213-1052
            (404) 749-0855

    7.    Ms. Tiffany Parks
            3088 Hazelwood Dr SW
            Atlanta GA 30311
            (404) 454-3851

    8.    Ms. Garica Walker, EEOC Investigator
            100 Alabama Street S.W., Suite 4R30
            Atlanta, GA 30303
            (470) 531-4768

9.      Ms. Tuni Acosta – impeachment purposes
        1145 Casteel Rd
        Powder Springs, GA 30127-4493

10.     Marilyn LeGree – impeachment purposes
        c/o Julie Oinonen
        Williams Oinonen LLC
        (404) 654-0288

11.     Rebuttal Witnesses

12.     Impeachment Witnesses

**ATTACHMENT F-2**
**Defendants' Witness List**

Defendant will call the following witness at trial:

1. Mr. Charles Reedy, Defendant
   c/o Defense counsel

Defendant may call the following witnesses at trial:

1. Ms. Michelle Hudley
   c/o Defense Counsel

2. Ms. Garica Walker, EEOC Investigator
   100 Alabama Street S.W., Suite 4R30
   Atlanta, GA 30303
   (470) 531-4768

3. Jonathan Turner, (for purposes of impeachment exclusively)
   GXO Manager, Regional Security
   c/o GXO

4. Steve Nelson (for purposes of impeachment exclusively)
   (678) 739-8591

5. Clifford Carey (for purposes of impeachment)
   (404) 246-3982

6. Larry Johnson (for purposes of impeachment)
   (678) 462-5889

7. All Impeachment Witnesses

**ATTACHMENT G-1**

**Plaintiff's Documentary and Physical Evidence to Be Tendered at Trial**

| Exhibit Number | Document Description | Descriptor/Bates Number |
|---|---|---|
| P-1 | October 1, 2025 Stipulation of Liability | CM/ECF Doc. 88 |
| P-2 | EEOC Charge | 30(b)(6) Deposition, Exh. 22; Bryant 001-003 |
| P-3 | April 14 Letter of Representation and Evidence Preservation Obligations | 30(b)(6) Deposition, Exh. 16; Bryant 247-249 |
| P-4 | Reedy Position Statement | 30(b)(6) Deposition, Exh. 24; Bryant 050 |
| P-5 | EEOC Requests for Information and Responses by Defendants | 30(b)(6) Deposition, Exh. 25; Bryant 022-049 |
| P-6 | EEOC Onsite Interview Notes | 30(b)(6) Deposition, Exh. 10; Bryant 051-063 |
| P-7 | Letter to Reedy from EEOC Investigator | 30(b)(6) Deposition, Exh. 20; Bryant 099-101 |
| P-8 | EEOC Cause Determination | 30(b)(6) Deposition, Exh. 18; Bryant 102-103 |
| P-9 | Notice of Right to Sue | Bryant 013-014 |
| P-10 | Secretary of State Company Documents | 30(b)(6) Deposition, Exh. 19; Bryant 286-303 |
| P-11 | Text Messages between Reedy and Bryant | 30(b)(6) Deposition, Exh. 21; Bryant 250-258 |
| P-12 | Text Messages between Hudley and Bryant | 30(b)(6) Deposition, Exh. 23; Bryant 259-269 |
| P-13 | Emails between Bryant and Hudley | Hudley Deposition, Exh. 17 |
| P-14 | EEOC FOIA File | Bryant 001-246 |
| P-15 | Daniels' Personnel File | Hudley Deposition, Exh. 11, p. 54-67 |
| P-16 | Handbook | 30(b)(6) Deposition, Exh. 26; Bryant 024-043 |

| P-17 | Compilation of Plaintiff's Hours and Rates for FLSA Damages | Summary pursuant to FRE 1006; compiling 30(b)(6) Deposition, Exh. 11; 30(b)(6) Deposition, Exh. 12; Bryant 305-344; Hudley Deposition, Exh. 11 p. 1-52; and testimony |
|---|---|---|
| P-18 | Payroll | 30(b)(6) Deposition, Exh. 11 |
| P-19 | Bryant Handwritten Hours | 30(b)(6) Deposition, Exh. 12; Bryant 305-344 |
| P-20 | ADP Records/Bryant Handwritten Hours Produced by Employer | Hudley Deposition, Exh. 11 p. 1-52 |
| P-21 | Tax Records for 2022 | 30(b)(6) Deposition, Exh. 17 p. 100-133 |
| P-22 | RESERVED | |
| P-23 | RESERVED | |
| P-24 | RESERVED | |
| P-25 | Reedy Affidavit | Hudley Deposition, Exh. 2 |
| P-26 | Hudley Affidavit | Hudley Deposition, Exh. 1 |
| P-27 | Reedy Deposition Transcript from Prior Lawsuit | CM/ECF Doc. 27-1 |
| P-28 | Defendants' Responses to Plaintiff's First Interrogatories | 30(b)(6) Deposition, Exh. 4 |
| P-29 | Residential Lease | Hudley Deposition, Exh. 3 |
| P-30 | Defendants' Responses to Plaintiff's Requests for Production | Hudley Deposition, Exh. 13 |
| P-31 | C&M Website | CM/ECF Doc. 27-4 and Doc. 27-5 |
| P-32 | Complaint | CM/ECF Doc. 1 |
| P-33 | Affidavit of Non-Service | CM/ECF Doc. 8-4 |
| P-34 | Answer to Complaint | CM/ECF Doc. 15 |
| P-35 | Amended Complaint | CM/ECF Doc. 18 |
| P-36 | Answer to Amended Complaint | CM/ECF Doc. 31 |
| P-37 | Second Amended Complaint | CM/ECF Doc. 45 |

| P-38 | Answer to Second Amended Complaint | CM/ECF Doc. 49 |
|------|-----------------------------------|----------------|
| P-39 | Second Answer to Second Amended Complaint | CM/ECF Doc. 59 |
| P-40 | EEOC Charge by Marilyn LeGree | Impeachment Purposes |
| P-41 | EEOC Determination Letter for Marilyn LeGree EEOC Charge | Impeachment Purposes |
| P-42 | LeGree Rebuttal to Position Statement | Impeachment Purposes |
| P-43 | RESERVED | |
| P-44 | RESERVED | |
| P-45 | RESERVED | |
| P-46 | Employee Termination/Separation Notice | Hudley Deposition, Exh. 11, p. 53 |
| P-47 | Defendants' Amended Responses to Plaintiff's Requests for Production | PDF titled "Def Amended resp to Plaintiff's RPDs to Defendants- Reedy C" Served on June 12, 2025 |
| P-48 | Defendants' Amended Responses to Plaintiff's First Interrogatories and Verification | PDF title "DEF resp to PLTF Interrogatories to Defendants - Reedy (Supp)" Served on June 23, 2025 |
| P-49 | 2022 Profit and Loss | P. 16 of PDF for Defendants' Amended Responses to Plaintiff's Requests for Production |
| P-50 | 2023 Profit and Loss | P. 17 of PDF for Defendants' Amended Responses to Plaintiff's Requests for Production |
| P-51 | Tax Records for 2023 | P. 20-53, 96-122 of PDF for Defendants' Amended Responses to Plaintiff's Requests for Production |
| P-52 | 2024 Profit and Loss | P. 18 of PDF for Defendants' Amended Responses to |

| | | |
|---|---|---|
| | | **Plaintiff's Requests for Production** |
| **P-53** | **Ending September 30, 2024 Profit and Loss** | **P. 19 of PDF for Defendants' Amended Responses to Plaintiff's Requests for Production** |
| **P-54** | **Tax Records for 2024** | **P. 54-95, 123-147 of PDF for Defendants' Amended Responses to Plaintiff's Requests for Production** |
| **P-55** | **AT&T Usage Details for 215.275.8666** | **P. 1-4 of PDF titled "Jun 12, Doc 2" produced by Defendants on June 12** |
| **P-56** | **Declaration of Garica Walker and Accompanying Exhibits** | |

**<u>Defendants' Objections for Plaintiff's Exhibit List</u>**

Defendant objects to the admission of P1-P5 of Plaintiff's Evidence list ( the "Cause Determination" letter, the Requests for Information and Responses, Onsite Interview Notes, and Letter to Reedy from Investigator), and any testimony related thereto, on multiple grounds:

1) **Hearsay (FRE 802):** These documents, particularly the "EEOC Cause Determination" and the investigator's notes, contain out-of-court statements offered for the truth of the matters asserted therein (i.e., that discrimination and retaliation occurred). While some courts have admitted "cause determinations" under the public records exception (FRE 803(8)), this exception is not absolute. Many courts recognize the substantial potential for prejudice inherent in such determinations, particularly when they are based on an ex parte investigation and contain conclusory findings. The underlying investigative materials (requests, responses, notes, and investigator letters) are replete with statements, opinions, and summaries of interviews conducted outside the adversarial process, all of which constitute inadmissible hearsay.

2) **Unfair Prejudice, Confusion of Issues, Misleading the Jury (FRE 403):** Even if theoretically admissible under an exception to the hearsay rule, the probative value of these EEOC documents is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

94

o **Prejudicial Effect:** An EEOC "Cause Determination" carries significant prejudicial weight because it presents an official government agency's "finding" that discrimination occurred. Juries may unduly defer to such a finding, believing it to be an authoritative pronouncement of guilt, rather than merely an investigative finding. This risks substituting the EEOC's non-binding conclusion for the jury's independent assessment of the evidence presented at trial.

o **Confusion of Issues/Misleading the Jury:** The "Determination" is based on an administrative investigation that is not subject to the same adversarial process, rules of evidence, or burdens of proof as a judicial proceeding. The facts considered by the EEOC may be incomplete, unverified, or based on information that would be inadmissible in court. Allowing these documents would invite the jury to speculate on the basis for the EEOC's conclusions, rather than focusing on the admissible evidence presented during the trial. The letter itself contains strong, definitive statements ("severe and pervasive harassment," "shifting reasons... do not withstand scrutiny and are pretext"), which are legal conclusions and factual findings that fall

squarely within the province of the jury. Admitting such a document

effectively pre-judges the ultimate issues before the jury.

Defendant reserves the right to object to any of Plaintiff's Exhibits to the

extent that they are not properly authenticated by witnesses at trial.

**ATTACHMENT G-2**

**Defendants' Documentary and Physical Evidence to Be Tendered at Trial**

| | | |
|---|---|---|
| **D-1** | **C&M Employee Handbook** | **30(b)(6) Deposition, Exh. 26; Bryant 024-043** |
| **D-2** | **Text Messages between Hudley and Bryant** | **30(b)(6) Deposition, Exh. 21; Bryant 250-258** |
| **D-3** | **Text Messages between Reedy and Bryant** | **30(b)(6) Deposition, Exh. 23; Bryant 259-269** |
| **D-4** | **Daniels' Personnel File** | **Hudley Deposition, Exh. 11, p. 54-67** |
| **D-5** | **ADP Records/Bryant Handwritten Hours Produced by Employer** | **Hudley Deposition, Exh. 11 p. 1-52** |
| **D-6** | **Complaint** | **CM/ECF Doc. 1** |
| **D-7** | **Affidavit of Non-Service** | **CM/ECF Doc. 8-4** |
| **D-8** | **Answer to Complaint** | **CM/ECF Doc. 15** |
| **D-9** | **Amended Complaint** | **CM/ECF Doc. 18** |
| **D-10** | **Answer to Amended Complaint** | **CM/ECF Doc. 31** |
| **D-11** | **Second Amended Complaint** | **CM/ECF Doc. 45** |
| **D-12** | **Answer to Second Amended Complaint** | **CM/ECF Doc. 49** |
| **D-13** | **Second Answer to Second Amended Complaint** | **CM/ECF Doc. 59** |
| **D-14** | **Defendants' Responses to Plaintiff's Requests for Production** | **Hudley Deposition, Exh. 13** |

## <u>Plaintiff's Objections for Defendants' Exhibit List</u>

Plaintiff does not object to Defendants' exhibits.

**ATTACHMENT I**

The Parties have submitted their Joint Request to Charge with Proposed Instructions and Verdict Form for both Phases I and II. [Docs. 91, 91-1, 91-2, and 91-3].